## No. 3451.

## A. B. MILLER vs. D. C. CHANDLER.

On the trial of a rule to dissolve an attachment, the truth of all the allegations of the petition can not be inquired into, as that would be trying the case on the merits.

Where the affidavit for an attachment attests the truth of all the allegations of the petition, and the petition sets forth the non-residence of the defendant, and a cause of action, the affidavit is sufficient.

The amount of an attachment bond must exceed by one-half, the sum demanded.

No correction, or alterations of a judgment can be made by the court, *ex proprio motu,* after the judgment has been entered on the minutes, except such as are merely clerical, or rectify errors of calculation. No change in the substance of a judgment can be made, save by means of another formal decree, rendered after a new trial of the case.

Paying an employee a certain portion of the profits of a business, in compensation of his services, does not make him a partner of the employer.

A certificate of discharge in bankruptcy, made according to the forms prescribed in the bankrupt act, is receivable in evidence before any court, to prove the fact of the discharge, and its regularity.

A discharge in bankruptcy is a complete bar to any suit brought against a bankrupt in a State court to enforce a debt which has been extinguished by that discharge.

APPEAL from the Fourth District Court, parish of Orleans. *Théard, J. Hays & New,* for plaintiff and appellee. *B. Egan,* for defendant.

The opinion of the court was delivered by MARR, J.

This suit was brought to recover a sum alleged to be due to plaintiff by defendant for his services as captain of defendant's steamboat Welcome. The petition charges that the defendant employed plaintiff and agreed to give him one-third of the earnings of the boat for his services.

On the usual affidavit, process of attachment was issued against the property of defendant, who resided in the State of Arkansas, and the property attached was released on bond.

Defendant moved to set aside the attachment on the grounds —

First—That the affidavit is not true.

Second—That the affidavit is insufficient, and does not justify the issuing of the writ.

Third—That the security on the attachment bond is not good and solvent, or such as the law requires.

Fourth—That the bond is irregular in form, and not sufficient in amount.

First—All the traversable allegations of the petition, except that which charges that the defendant is a non-resident, go to the merits. The defendant might, on a rule, put that allegation at issue, and might have the attachment dissolved, by proving that he resides in the State. But it would be necessary for him specially to deny the alleged non-residence; and the burden would be upon him to disprove that allegation. The general statement that the affidavit is not true where, as in this case, all the allegations of the petition are sworn to, is neither more nor less than a general denial, and the defendant can not, on a rule to show cause why the attachment should not be dissolved, put plaintiff on the proof of his case, or enter into any inquiry as to the merits.

Second—The petition sets out clearly and distinctly a cause of action *ex contractu* a debt alleged to be due to plaintiff by defendant, and it charges that defendant is a non-resident. The affidavit is that "all the allegations of the foregoing petition are true." There can be no question as to the sufficiency of this affidavit to authorize the order, and to maintain the writ of attachment.

Third—The surety in the attachment bond swore that he resided in the city of New Orleans, and that he was worth more than the amount of the bond. There is room for suspicion that he was merely a temporary sojourner in the State; but his testimony, not contradicted, shows

that he had the requisite qualifications, residence and pecuniary suffi-
ciency.

Fourth—The bond is in the usual form, and the amount is four thou-
sand dollars. The amount sued for is $2149, with interest from judicial
demand. The law requires a bond exceeding by one-half the amount
sued for, and a bond for $3200 would have been ample in this case.

The defendant excepted to the suit on several grounds, all of which
were referred to and were tried with the merits.

First—That the petition discloses no cause of action; because the
plaintiff alleges a partnership; and he can sue only for a liquidation and
settlement of that partnership, not for any particular amount, as claimed
in the petition.

Second—That, before this suit was brought, defendant had been made
garnishee in a suit in Arkansas in which plaintiff, Miller, was defendant,
and in which judgment had been rendered against Miller for $4050; and
that any claim or demand which Miller might have against defendant
had been seized by that garnishment.

On the merits defendant answered that he had employed Miller as
captain, and agreed to allow him one-third of the net profits of the boat,
after deducting two thousand dollars per month for the charter; that
plaintiff had served under that agreement from the third of December,
1869, to some time in January, 1870, and that during that time he had
drawn $1001 12.

Defendant also pleads that he is holder and owner of the note of
plaintiff for $3639, dated the thirty-first of May, 1866, payable on de-
mand; and he claims, in reconvention, the amount of that note with
interest from the thirty-first of May, 1866; and such further sum as may
be found, on settlement of the accounts of the boat, to have been over-
drawn by plaintiff.

Plaintiff pleads, so far as the note is concerned, the discharge in
bankruptcy granted to him by the Supreme Court of the District of
Utah, and files the certificate, which is dated the twenty-second of July,
1869, and relates back to the thirty-first of December, 1868, the date of
the filing of the petition for adjudication.

The proof shows that plaintiff received at different times from the
clerk of the boat $1001 12, and that he had returned seven hundred
dollars, leaving $301 12 to be accounted for by him.

It was proven that the proceedings in garnishment were discharged by
judgment of the Circuit Court in Arkansas on the fifteenth of December,
1870.

It was also proven that plaintiff remained on the Welcome, under his
agreement with defendant, four trips, and that the boat paid for loss
and damage on fifty-six bales of cotton, and three bales short delivery,

in consequence of which the profits on the four trips were reduced to $211.

The case was tried and submitted on the fourth of May, 1871; and on the ninth of May, for reasons orally assigned, judgment was entered rejecting the demand of the plaintiff, and the reconventional demand of defendant. The next day the court, *ex proprio motu*, ordered that "the judgment entered yesterday be annulled and made of no effect, as having been entered erroneously;" and, immediately, "for reasons orally assigned in open court," judgment was rendered and entered in favor of plaintiff for $1289 85, with interest and costs, and privilege on the property attached ; and dismissing the reconventional demand.

After an ineffectual motion for a new trial, defendant took a suspensive appeal.

It seems to us the judge of the court below proceeded very irregularly. After having rendered judgment in open court, and having it entered on the minutes, the judge might, indeed, have corrected a mere clerical error, or a mistake in calculation, but to set aside a judgment rejecting the demand of plaintiff, *ex proprio motu*, and to render a judgment, immediately, in favor of plaintiff for a specified sum, with privilege on the property of defendant, thus changing the entire substance and effect of the judgment first rendered and entered, seems to us most extraordinary, and in excess of judicial authority; and we consider this action of the judge so plainly against the letter of the law that we can not give it. the apparent sanction of our silence, nor incur the risk of allowing it to become a precedent.

The Code of Practice, article 547, provides that judgments may be amended by the court, until after having been signed—

First—To alter the phraseology, but not the substance.

Second—To correct errors of calculation, if more have been given than was demanded, or if the party in whose favor the judgment was given had been ordered to pay the costs.

"Except in the cases above provided, courts can not alter their judgments; but they may *ex officio* direct a new trial in order to revise their judgments."

When the judge discovered, as it seems he must have done on the reading of the minutes the next morning, that the judgment entered was not that which he had intended to render, it was his duty to have ordered, *ex officio*, a new trial, and to have had counsel of both parties. notified. The course which the judge pursued in this case was manifestly in violation of the law as laid down in the Code of Practice; and it shows the importance of requiring the judges to assign in writing the reasons for their judgments, with reference to the law on which they are based, when that is practicable.

Defendant's counsel was mistaken in supposing that plaintiff alleged a partnership; there was no partnership between him and defendant, and the agreement that an employee shall receive a certain part of the profits as compensation for his services, does not make him a partner, even as to third persons, much less with respect to his employer.

The garnishment having been disposed of some months before the trial, both the causes of exception to the suit were properly disregarded. Defendant took three bills of exception, one of which only requires any notice at our hands, and that is the one taken to the ruling of the court in admitting in evidence the certificate of discharge in bankruptcy. Defendant insisted that it should be authenticated as prescribed by the act of Congress of 1790. This act relates to the authentication of the records and proceedings of the courts of the several States; and it pre-scribes a form of authentication which is obligatory throughout the United States; that is, where the mode of authentication presented by that act is observed, every court in every State is compelled to admit the proof as sufficient. But this act does not relate to proceedings in the Federal Courts, nor does it forbid any State to admit in its courts proof and authentication of the records and proceedings in the courts of the other States different from that prescribed by the act.

The bankrupt act prescribes the form of the certificate of discharge, section 32, Revised Statutes, section 5115, and section 34, Revised Statutes, section 5119, provides that the discharge "may be pleaded by a simple averment that on the day of its date such discharge was granted to the bankrupt, setting a full copy of the same forth in its terms as a full and complete bar, etc., and "*the certificate shall be conclusive evidence in favor of such bankrupt of the fact and regularity of such discharge.*"

The plea of the discharge in bankruptcy in this case is in exact con-formity with the bankrupt law, section 34, and the certificate is signed by the Chief Justice, attested by the clerk, and has attached to it the seal of the court. That which was presented to the court below as proof of the discharge in bankruptcy, and in support of the plea, is precisely that which the bankrupt act prescribes, and which it declares shall be *conclusive evidence of the fact and regularity of the discharge.*

We think that a certificate of discharge in bankruptcy, signed by the judge, attested by the clerk, under the seal of the court, is not only sufficiently authenticated, but that it is precisely the means by which the bankrupt is to prove and to have the benefit of his discharge.

Congress has exclusive control of this whole subject matter, and its legislation is the paramount law. It is not competent for any court within the territorial limits of the United States to require any other proof of the discharge than that which the act of Congress declares shall be *conclusive evidence;* nor to refuse to give to that evidence and

to the discharge the effect of a complete bar to all the debts and demands falling within the scope of the discharge.

The liability of plaintiff on the note pleaded in reconvention is completely and forever barred by the plea and proof of his discharge in bankruptcy. He is entitled to one-third of the $211 net profits earned while he was in the employ of defendant; and he is accountable for the balance drawn by him on account, $301 12; that is, he is to be charged with $301 12, and to be credited with one-third of $211; viz., $70 34, leaving a balance against him of $230 78, for which defendant is entitled to judgment, with interest from judicial demand, eighteenth March, 1870.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and annulled, and, proceeding to render such judgment as the court below should have rendered, it is further ordered, adjudged, and decreed that the demand of plaintiff against the defendant be rejected; that the reconventional demand of defendant against plaintiff for the amount of the note for $3639, with interest from the thirty-first May, 1866, its date, be also rejected; and that on the remainder of the reconventional demand there be judgment in favor of the defendant appellant David W. Chandler against the plaintiff appellee Andrew B. Miller, for the sum of $230 78, with interest at the rate of five per cent per annum from eighteenth March, 1870, until paid, and costs in both courts.