Halliday vs. Bridewell.

No. 9154.

G. V. HALLIDAY VS. HENRY F. BRIDEWELL.

As between the parties, consent is essential to establish a partnership, by which is meant, not that the parties should qualify their contract as a partnership *co nomine*, but that such consent should appear either from the terms or the nature of the contract. Where, as in this case, it affirmatively appears that one party employs the other and agrees to pay him a stipulated proportion of the net profits as compensation for services, that does not constitute a partnership *inter sese*.

The fact that plaintiff carried on business in the name of Halliday & Co., without any partner, cannot relieve defendant from paying him what he justly owes.

Defendant being the manager of the business in New Orleans, in the absence of plaintiff, who resided in St. Louis, and having control of the book-keeper and books, the books are proper evidence against him, being, properly speaking, his own statements of the business to his absent principal. Other defenses are without merit.

APPEAL from the Eighteenth District Court, Parish of Tangipahoa. Thompson, J.

*J. M. Wright, Marr & Reid* for Plaintiff and Appellee.

*H. E. Upton* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J.   On December 17, 1878, plaintiff and defendant entered into written contract, substantially as follows :

" G. V. Halliday, now doing business under firm style of G. V. Halliday & Co., in St. Louis, Mo., hereby agrees to commence a separate and distinct business in New Orleans, La., in January, 1879, with stock of safes, locks, etc., and office fixtures aggregating say $3000, at list prices, etc.   *   *   He further agrees to furnish the capital necessary for payment of freight, drayage, rent, clerk hire, traveling and petty expenses during the year 1879, said stock and fixtures to be and remain the property of G. V. Halliday until sold to *bonâ fide* purchasers and accounted for to him, until December, 1879.

"He further agrees to *employ* Mr. Henry F. Bridewell to assist in managing the New Orleans business on the following terms, viz :

" H. F. Bridewell is to devote his whole time and attention to the New Orleans business, traveling, soliciting orders, etc.   For *compensation* therefor, G. V. Halliday agrees to *allot and bestow* on H. F. Bridewell, one-half of the net profits which shall accrue to the said business in New Orleans, during the year ending December 31, 1879, after all expenses have been duly charged to profit and loss and after a credit of ten per cent interest has been allowed to G. V. Halliday, on his average capital invested during the year.

Halliday vs Bridewell.

"On December 31, 1879, G.V. Halliday shall withdraw his investment with ten per cent interest, from the available assets, and the remainder shall, on January 1, 1880, be equally divided between Halliday and Bridewell, and form their joint stock in business at New Orleans, as equal partners in the continuance of the same, *if mutually desired.* Bridewell further agrees to make daily report of sales and full reports of business whenever requested and at least every three months; not to withdraw more than $100 per month for personal use; and to remit to Halliday, receipts, in cash and bills receivable, as fast as received, except so much cash as is necessary for current expenses.   *   *   *

"The true intent and meaning of this agreement is herein set forth and each party signing hereto, binds himself to enhance the general welfare of G. V. Halliday & Co., New Orleans, La., which shall be the name and firm style."

At the end of 1879, the following additional agreement was entered into: "By mutual agreement, this 31st December, 1879, the terms of this contract are continued to December 31, 1880, excepting that Halliday waives his credit of ten per cent interest on average capital invested, and Bridewell is allowed to use not more than $150 per month, etc., otherwise to remain in full force and effect."

Under these agreements, the business was carried on during 1879 and 1880, and then terminated.

The plaintiff alleges that defendant, as his agent and employé, drew from the funds of the concern an amount of $3070 beyond what he had a right to draw, under the contract, for the recovery of which, or of such sum as may be found due on a due accounting of his agency, he brings this suit.

The defendant files three exceptions and, afterwards, a general denial.

The first exception to the jurisdiction of the court is frivolous.

The second exception is that the contracts established a partnership between plaintiff and defendant which had not been settled and that plaintiff could not sue for a specific sum but only for liquidation and settlement of the partnership.

The contract explicitly declares that "the true intent and meaning of this agreement is herein set forth." If this be true, it is difficult to see how the conclusion resulting from its express terms, can be avoided, that Halliday, alone, established and carried on the business in New Orleans; that *he employed* Bridewell to manage the business and to render certain stipulated services; and that *he* agreed, in compensa-

tion for said services, to " allot and bestow " upon the said Bridewell, one-half the net profits. The other stipulations are appropriate as fixing the facilities which Halliday bound himself to furnish in order that profits might be earned and as settling the basis upon which net profits were to be ascertained.

Our Code expressly provides that " partnerships must be created by the consent of the parties." Article 2805. We are not here concerned with the modifications of this, applicable to third persons. See City vs. Gauthreaux, 32 A. 1126.

As between the parties, *consent* is essential. By this, is not meant that they must in terms qualify their contract as a partnership *eo nomine;* but it must appear, either from the terms or from the nature of the contract, that it is a partnership; and in determining the question, both the terms and the nature of the contract must be considered together. It would be perfectly competent for parties to form a contract with each other, which, ordinarily, would constitute a partnership and produce all the effects of partnership, and yet to stipulate with each other that it should not produce such effects; and such stipulation, as between themselves, would be valid.

Nothing, however, is better settled than that a contract by which one party receives a part of the profits as a compensation for services, does not, necessarily, constitute a partnership, especially *inter sese.* Bulloc vs. Paillos, 8 N. S. 174; Cline vs. Caldwell, 4 La. 140; Hallett vs. Desban, 14 A. 529; Horgrave vs. Conroy, 4 C. E. Green, 281; McMahon vs. O'Donnell, 5 *Id.* 306.

Where, in such a case, it clearly appears that the party so remunerated, is an *employé* and not a partner, the presumption of partnership as between the parties is conclusively rebutted.

Such is the case here. It is obvious, to our minds, that this contract was not intended as creating an immediate partnership, but was entered into with a view to an ultimate partnership at the end of the year, " if then mutually desired." That it was not then desired or contemplated sufficiently appears from the supplemental agreement.

The exception was properly overruled.

The third exception is of no cause of action, based on the ground that plaintiff alleges that he had transacted business in the name of G. V. Halliday *& Co.*, without having any actual partner interested, in violation of a prohibitory law. R. S. §§ 2668-9.

There is nothing in the exception. It is true the code provides that " whatever is done in violation of a prohibitory law is void," article 11;

but what is it that defendant claims should be avoided? Plaintiff sues, in his individual name, under a contract made by himself, individually, for the recovery of moneys received by defendent as his agent and not accounted for. There is no room for the application of the principal here, even if, in any case, a debtor of an individual who has violated this statute could invoke it as a shield to protect him from paying what he justly owes. See Kent & Co. vs. Mojorrier, decided this day.

On the merits, we find no reason for disturbing the judgment of the lower court.

The plaintiff supported his claim by the books of the business and by statements rendered by defendant and his letters accompanying them.

Defendant had the entire management of the business in New Orleans; he employed the book-keepers and the books were kept under his supervision. As the judge *a quo* well says : " these books are, in reality, Bridewell's own statements to his employer, of the business in New Orleans." The objection that they are not competent evidence against him has no foundation.

The pretension that the amount which he was allowed to draw out monthly, for personal use, was a compensation over and above his share of the net profits, finds no support in the terms of the contract.

The attempt to supplement the books and statements by an alleged private memorandum kept by defendant and never exhibited until the trial of the case, cannot be countenanced.

The claim for half of stock on hand is obscure and stale. He made no such claim when he was discharged or afterwards, nor even in his pleadings, where it should have been specially urged, if relied on.

Judgment affirmed.

Rehearing refused.