No. 3895

**Second Circuit**

———

**BOUTTE v. R. L. ROLAND & SON ET AL.**

———

(January 27, 1931. Opinion and Decree.)

———

Hakenyos, Provosty & Staples, of Alexandria, attorneys for plaintiff, appellant.

White, Holloman & White, of Alexandria, attorneys for defendants, appellees.

DREW, J. Plaintiff, a journeyman bricklayer, sued for compensation under the Workmen's Compensation Law of Louisiana (Act No. 20 of 1914, as amended), alleging total disability, and asks for judgment for the maximum amount allowed under the said law for a period not to exceed four hundred weeks. He makes defendants in the case R. L. Roland & Son, a co-partnership composed of Robert L. Roland and Robert L. Roland, Jr., and the Georgia Casualty Company, the insurer of Roland & Son. He alleges that on the 22d day of January, 1930, defendants Roland & Son, through their duly authorized foreman and agent, Jerry Taylor, employed your petitioner to work as a brick mason on the Lawtell school building at the rate of $12 per day for five and one-half days per week, and agreed to furnish transportation to and from the job; that on the morning of the 23d of January, 1930, the said Jerry Taylor called for petitioner in his automobile at petitioner's home in New Iberia, La., to transport petitioner, according to his contract and agreement, to the Lawtell schoolhouse in St. Landry parish; that petitioner entered said automobile with his tools under the direction and care of the said Taylor; that the said foreman then proceeded in his automobile towards Lawtell at the rate of forty-five miles an hour, and that, upon reaching Broussard, La.—it being the shortest route —the right front tire of said automobile blew out, causing the automobile to wreck and violently throw petitioner to the ground. He alleges that at the time of said accident he was performing services arising out of his employment with the contractor and while in the course of his employer's trade and business; that he suffered a fracture of his right arm above the wrist and a fracture of one rib. He alleges that he is entitled to the sum of 65 per cent of his wages during the period of his disability, not to exceed four hundred weeks.

He further alleges his indebtedness to physicians and for hospital expenses and medicines in the sum of $67.40, and prays for judgment accordingly.

After the filing of the suit, the testimony of the foreman, Jerry Taylor, was taken out of court, and, after taking the said testimony, petitioner amended his original petition alleging that Jerry Taylor, the foreman, was also interested in the business of building the schoolhouse at Lawtell and therefore a partner in the enterprise, and made Jerry Taylor a party defendant in the suit.

Defendants answered denying the allegations of plaintiff's petition and specially denying that Jerry Taylor, the foreman, had agreed to furnish transportation to and from the place of work or that he had any authority to so agree. On these issues the case was tried in the lower court, resulting in judgment rejecting the demands of plaintiff, and from this judgment plaintiff has appealed.

The plaintiff lived at New Iberia, La., and the defendants Roland & Son had a school building contract at Lawtell, La., some fifty miles from New Iberia. Jerry Taylor was a bricklayer foreman for Roland & Son on the Lawtell job, and Taylor also lived at New Iberia and was a friend of plaintiff. Taylor was also foreman on another job at Reserve, La., with which Roland & Son had no connection, and plaintiff worked under Taylor on the Reserve job. They completed the job at Reserve and Taylor drove plaintiff to New Iberia, where they both lived. Upon reaching New Iberia, Taylor told plaintiff that he wanted to put him to work the next day on the Lawtell school job. Plaintiff relates the conversation which took place between him and Taylor in regard to the Lawtell job in his testimony as follows:

"Q. How was this agreement entered into?
"A. I had been 'working for him over at Reserve and I was to take my tools out and he says, 'Leave them in here.'
"Q. In what?
"A. In his car, and he says, 'I want to take you to Lawtell and put you to work there', and I says, 'All right.' I thought he was going to send me to Mississippi with his daddy."

Taylor relates the same conversation in the following manner:

"Q. Please describe the agreement, if any, that took place between you and Bout-

te prior to January 23, that is, the night before the day of the accident.
"A. I told him he could come to Lawtell, and he could go to work.
"Q. Did you tell him you would come to get him in the morning?
"A. He asked me in what car we would go in, mine or his. I said we would go in mine as his tools were already in my car. So we used my car the next day, and I passed by to get him."

On cross-examination, plaintiff was asked if Taylor was not taking him to Lawtell as a matter of accommodation, to which he replied: "I don't know anything about that."

Plaintiff testified that, on some of the jobs on which he had worked for Taylor, away from New Iberia, he sometimes rode to work with Taylor and sometimes went in his own car or rode with other workmen, and nowhere in his testimony does he say that his contract with Taylor to work on the Lawtell job included as part of his compensation the duty of Taylor or of defendants, Roland & Son, to transport him to or from his work.

Taylor was bricklayer foreman for Roland & Son, with full authority to hire and fire the brick masons. When Roland & Son bid on a job, they estimated separately the cost of labor in laying the brick, and the compensation paid Taylor as foreman was $1.50 an hour, plus $1 a day extra as foreman, and, provided the cost of laying the brick was less than the estimate made by Roland & Son, they gave Taylor as a bonus one-half the amount saved by him less than their estimate. There is no dispute as to the compensation to be received by Taylor as foreman for Roland & Son, and plaintiff alleges and contends that such an arrangement constituted Taylor a co-partner of defendants Roland & Son. However, we cannot agree with this con-

tention. Partnership is a contract dependent for its creation upon the consent of the parties. Revised Civil Code, art. 2805. And in the case of Collom v. Bruning, 49 La. Ann. 1257, 22 So. 744, 747, the Supreme Court of this state said:

"Consent shown by one person, who has furnished the capital by which certain operations are carried on, that another, who has employed his time, his skill, and his services for their success, should receive one-half of the profits to be derived from the same, is perfectly consistent with the fact that the latter person stands towords the former as a mere employee."

The same principle was enunciated in Halliday v. Bridewell, 36 La. Ann. 238, and in Leonard v. Sparks, 109 La. 543, 33 So. 594, and in McWilliams v. Elder, 52 La. Ann. 995, 27 So. 352. Therefore Taylor was not a co-partner with the defendants Roland & Son, nor was he interested in the enterprise, other than as an employee.

The burden of proof is on plaintiff in a suit under the Employers' Liability Act to prove that the injury was received while performing services arising out of or incidental to his employment in the course of his employment. Dimes v. Lassiter & Co., 7 La. App. 16, and Goree v. Atlantic Oil Producing Company, 2 La. App. 558.

In this case, we do not think the plaintiff has met that burden. The testimony shows that Roland & Son had not authorized Taylor to make any contract of employment wherein he was required to transport the employees to and from their work and they had no knowledge that plaintiff had been employed at all by Taylor. Plaintiff was not on the pay roll of Roland & Son and had never at any time been on their pay roll. The car in which Taylor and plaintiff were riding was not the property of defendants Roland & Son, but belonged to Taylor, and he and plaintiff are shown to have been the best of friends, and, when he picked plaintiff up to carry him to Lawtell, it was purely a matter of accommodation between friends, and therefore the accident which caused the injury to plaintiff did not arise out of or in the course of plaintiff's employment, nor was it incident thereto.

The accident occurred approximately forty miles from the place where plaintiff was to go to work, and it cannot be said from the situation of the place of the accident that there was any causal connection between it and the risks or hazard incident to the place of employment, as was the case in Jones v. Louisiana Central Lumber Company, 2 La. App. 260; Gasca v. Texas Pipe Line Company, 2 La. App. 483; Prevost v. Gheens Realty Company, 151 La. 508, 92 So. 38; or LeBlanc v. Ohio Oil Company, 7 La. App. 721.

The general rule is that an injury to an employee on the public highway in going to or returning from the place of employment does not arise in the course or out of the employment. However, there are exceptions to the general rule. See LeBlanc v. Ohio Oil Company, supra; Cudahy Packing Company v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; Jones v. Louisiana Central Lumber Company, supra; Prevost v. Gheens Realty Company, supra; and Arthur C. Nesbitt v. Twin City Forge & Foundry Company, 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165.

While the place of accident was upon the public highway and the accident was directly attributable to a risk which was common to all persons using the highway, these facts do not necessarily preclude recovery provided it can be said that the employment resulted in exposing plaintiff to risk beyond that to which the public was

subjected, or that it can be said the accident occurred on the employer's own premises. In this case, the employment did not result in exposing plaintiff to a risk beyond that which the public was subjected, and it did not occur on the premises of the employer. The relation the place of the accident bears to the premises where the person is employed must be taken into consideration. Had defendant, through its duly authorized agent, contracted with plaintiff to transport him to and from his work and the accident had occurred while he was being thus transported, it could be said that the accident arose in the course of the employment. But, as the evidence does not show any such contract, we do not think that because the plaintiff had on different occasions on other jobs in which the defendants were not interested, ridden to work with the present foreman of plaintiff at the foreman's request, it could be held to be a tacit agreement to transport the plaintiff to and from his work by the defendants herein.

This case is very similar to the cases of Bass v. Shreveport-Eldorado Pipe Line Company, 4 La. App. 107, and Nugent v. Lee Lumber Company, 4 La. App. 371, with the exception that in the two cited cases plaintiffs were riding from work to their home in vehicles owned by the defendant, and in the present case plaintiff was riding to work in a vehicle not owned by the defendant, but by defendant's foreman, without the knowledge or consent of defendant. The reasons assigned in the Bass and Nugent cases are applicable here. The plaintiff has failed to make out his case, and the judgment of the lower court rejecting his demands is correct.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.