### YEARWOOD v. UNITED STATES.
#### No. 840.

District Court, W. D. Louisiana.
Shreveport Division.
March 25, 1944.

Cook, Lee, Clark & Egan, of Shreve-
port, La., for plaintiff.

Malcolm E. Lafargue and John A. Patin, both of Shreveport, La., for defendant.

PORTERIE, District Judge.

This is a suit to recover $1,003.37 paid as tax, penalty, and interest under the provisions of Titles VIII and IX of the Social Security Act, 49 Stat. 620, 636, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq. The action arises as the result of the determination by the Commissioner of Internal Revenue that the persons upon whom the taxes were imposed were the employees of the plaintiff within the meaning of the Social Security Act.

Were certain persons who purchased and sold used cars for the plaintiff, both at and away from his place of business, his partners, independent agents, or were they his employees within the meaning of Sections 811(b) and 907(c) of the Social Security Act?

We make the following finding of facts, much in line with the brief of the Government; there are some serious and significant modifications, however.

Plaintiff as a partnership on February 1, 1943, paid unemployment taxes under the provisions of Title IX (Federal Unemployment Tax Act) of the Social Security Act, in the amount of $479.56, penalty of $119.-89, and interest of $27.32, a total of $626.-77, for the period from November 12, 1940, to June 30, 1942. On the same date it paid insurance contributions taxes under the provisions of Title VIII (Federal Insurance Contributions Act) of the Social Security Act in the amount of $346.98, penalty of $3.78, and interest of $25.54, a total of $376.30, for the same period.

Claims for the refund of the above taxes were filed timely, and were rejected in full on March 18, 1943, by registered letter from the Commissioner of Internal Revenue.

During the tax period the plaintiff with one Glasscock as a partner was in the automobile business and was engaged principally in the buying and selling of used cars. Yearwood and Glasscock were the original members of a commercial partnership from October, 1940, to June, 1942, and the business was operated under the name Boyd Yearwood, and the sign at the place of business read: "Boyd Yearwood—Used Cars Bought and Sold." The agreement between Yearwood and Glasscock provided for the sharing of profits and losses on a fifty-fifty basis.

Yearwood and Glasscock had oral agreements with ten other men, hereinafter referred to as buyers, under which the buyers purchased cars and then traded or sold them. Purchase and sale prices were not fixed by Yearwood and Glasscock alone, but the worth of the cars brought to the lot of the partnership was discussed, the buyers consulting one another as well as the plaintiffs in arriving at the sale prices. In the cases when buyers disposed promptly of the cars they bought, without the cars reaching the lot, the sale price was fixed altogether by the particular buyer, without consultation with anyone. Generally the cars were not so handled. The buyers were familiar with the automobile industry and had considerable experience in buying and selling cars. Plaintiff-partnership reserved the right to tell the buyers to slow down whenever it was overstocked. Under the agreements, there were no established hours of work or assignments of territory; the buyers turned in expense accounts to plaintiff and Glasscock, which excluded living and traveling expenses of the buyers; and the cars were purchased by drawing drafts on plaintiff-partnership, (and here is meant on Yearwood—as between the partners Yearwood and Glasscock, Yearwood was entrusted with all the funds) which furnished all the capital. Occasionally plaintiff-partnership did not finance purchases; it (he—Yearwood) then borrowed from a finance company.

The agreements provided for a separate and distinct transaction in respect to each car, cards being kept showing the name of the buyer handling the deal, the type of car, the purchase price, the expenses involved in its purchase, the cost of reconditioning, the name of the person from whom the car was purchased and the name of the person to whom sold, the dates of the acquisition and sale, the sales price, and the profit or loss on the sale. The buyer received fifty per cent of the profit realized from the sale of each car he handled, or shared the loss to the extent of fifty per cent. In other words, the division was twenty-five per cent to Yearwood, twenty-five per cent to Glasscock, and fifty per cent to the particular buyer. All expenses involved in the purchase, reconditioning and sale of the car were paid for by plaintiff and Glasscock, but were added to the first cost in determining profit or loss. The proceeds of the sale went to plaintiff and Glasscock, and this partnership in turn deposited the proceeds to Yearwood's ac-

count. This one-account method was known and understood by all. When the profit on a particular car was determined, the buyer was paid his share by check on this personal account, cash advances being deducted. It does not appear how often checks for profits were drawn, but profits on particular cars sold by a buyer were offset by losses suffered on other cars sold by the same buyer. The oral agreements were terminable at any time by either party.

Plaintiff-partnership employed one mechanic to work on the cars brought to the lot, two porters, and a bookkeeper, but, by understanding and agreement, it paid them and this expense was not to be shared by the buyers; neither was the expense for the lot to be shared—the lot being leased in the name of Yearwood and not in the name of the partnership.

When new men were associated, it was known to all. There was never a discussion between all the parties with a view of establishing and declaring the relation, whether it be that of ordinary employment, that of a number of partnerships, or that of separate independent contractors. The tax returns made by all, however, declare partnerships. Only one set of books was kept in respect to the plaintiff-partnership and the buyers, and the income and distributions to the buyers were covered in a single return rather than in separate returns for each alleged partnership. A return was filed for each of the years 1941 and 1942 showing the income of and distributions made by Boyd Yearwood Used Cars to the various buyers. The various buying partnerships were alleged in these returns. The individual returns made by the various buyers showed as a partnership revenue the exact items earned by each as shown in the Yearwood-Glasscock returns.

Insurance on cars in the lot was paid by plaintiff-partnership, and the policies were made payable to plaintiff-partnership and the finance company or other persons who might have financed the purchase of a car.

This ends our finding of facts.

The classification of the contractual relation in this case is not easily made; the case is in the twilight zone of three relations, to-wit: partnership, ordinary employment, and independent contractor.

■ One of the strongest points made by the Government is that the mere sharing of profits and losses is not enough to constitute partnership. The following host of cases is given, and in the number, very properly, as the Louisiana law is to guide us, there are many Louisiana cases: Utter v. Irvin, 5 Cir., 132 F.2d 416; Sugg v. Hopkins, 5 Cir., 11 F.2d 517; Boutte v. R. L. Roland & Son, 15 La.App. 530, 132 So. 398; Leonard v. Sparks, 109 La. 543, 33 So. 594; Shushan Bros. & Co. v. Drennan & Hillcoat, 158 La. 480, 104 So. 214, 216; McWilliams v. Elder, 52 La.Ann. 995, 27 So. 352; Halliday v. Bridewell, 36 La. Ann. 238; Lipscomb v. State, 148 Miss. 410, 114 So. 754; and especially is this urged by the Government where, as is alleged here, a sharing of profits and losses is only a means of compensation: Meehan v. Valentine, 145 U.S. 611, 12 S.Ct. 972, 36 L.Ed. 835; Ætna Ins. Co. v. Murray, 10 Cir., 66 F.2d 289; Demary v. Royal Indemnity Co., La.App., 182 So. 389; Daigle v. Crescent City Garage, La.App., 180 So. 831.

Two cases in particular have established quite definitely the Louisiana law on the subject because there is an examination in them of all of the previous jurisprudence. These are the cases of Leonard v. Sparks and Shushan Bros., supra.

■ It is the rule in Louisiana (and it is not in conflict with the majority rule of the United States) that there must be proof between the parties comprising the commercial partnership (Louisiana Civil Code, Article 2825) of a community of goods and a common proprietary interest. Shushan Bros. case, supra.

■ Albeit a sharing of profits and losses is fundamentally an attribute of a partnership, and less generally an attribute of an ordinary employment relation, it would seem that the buyers in this case should have proved a proprietary interest in the cars purchased to really dovetail the law (at least to meet the Government's contention) in the establishment of the relation of partnership. This burden is and remains with the plaintiff. McDermott v. Henricksen, D.C., 45 F.Supp. 277.

■ We have facts and circumstances in this case from which legal inferences are permitted. These inferences establish a common proprietary interest. It would serve very little purpose to have oral conversations between the parties involved, wherein they had decided among themselves and had accepted what relationship existed; we should still have to go to the actual facts, for these conversations would

be self-serving, and, consequently, would be inadmissible.

When one of the buyers in the field bought a second-hand automobile, gave a draft on Yearwood and Glasscock for the payment, was the title of that car in the partnership composed of Yearwood and Glasscock on the one hand and the particular buyer on the other? Since the agreement between all the parties, though never written as articles of partnership, provided that Yearwood and Glasscock would furnish the capital for the purchase of cars, we may assume that when a purchase was made of a car the capital was loaned by Glasscock and Yearwood to the partnership including the individual buyer, created by the purchase of the car.

As an illustration, if a creditor of Yearwood and Glasscock were to have seized the bought car, would the seizure have been of one of the cars as if it were owned only by Yearwood and Glasscock, or would the seizure be only of the equity of Yearwood and Glasscock in the car, once the agreement of the partnership affecting that car was fulfilled? We believe the car would have to be repaired, after its seizure, sold, and the partnership relation cleared, while in custodia legis; thus, finally, the remainder of the money from the sold car would be turned over by the court to the seizing creditor, which would be composed of the amount of the loan made by Yearwood and Glasscock, plus the profit made, or minus the loss incurred, by Yearwood and Glasscock in that particular transaction.

■ The laws of Louisiana permit a partnership under the above facts and conditions. La.C.C. Arts. 2824–2828. Though Article 2839 reads as follows: "Partnership in commendam is formed by a contract, by which one person or partnership agrees to furnish another person or partnership a certain amount, either in property or money, to be employed by the person or partnership to whom it is furnished, in his or their own name or firm, on condition of receiving a share in the profits, in the proportion determined by the contract, and of being liable to losses and expenses to the amount furnished and no more," it is not exclusive; the reason for the special writing of Article 2839 is to restrict the liability of the partner in commendam "to losses and expenses to the amount furnished and no more." It is a departure from the general rule of liability in Louisiana partnerships. The general rule is that after all partnership assets are exhausted, individual members of a commercial partnership are "bound in solido for the debts of the partnership." Article 2872.

■ From all the facts and circumstances of this case, we believe that numerous partnerships were created by the consent of the parties. La.C.C. Art. 2805. It was the real meaning and intention of the parties, expressed actively, in the manner of doing business together, in the mode of settlement, etc. Chaffraix & Agar v. John B. Lafitte & Co., 30 La.Ann. 631.

The financial help of Yearwood was relatively inconsequential, not such as to rob the buyer on the road of his independence as a partner and make of him an employee. Sale of the renovated car followed the original purchase so promptly that very little money was needed to operate.

Our conclusion, therefore, is that the several buyers of these cars had a proprietary interest in common with Yearwood and Glasscock in each of the cars as bought.

On the other hand, if the buyers be independent contractors and not partners, nor employees, then the necessity in the relation of the parties of a common proprietary interest in the thing sold does not exist, as we shall show further.

■ We appreciate the contention of the Government when it says that the ten men in the field were employees and that the measure of their wages was the profit made in the sale of the used automobile, after it had been repaired and painted, for a price above the sum of the original cost and the repair cost. Many of the relations between the parties are both the relations of employer and employee on the one hand, that of partners on the other, or that of a partnership and several independent contractors. To make an illustration out of one of these relations, the fact that either party may quit at any time is an attribute as well of an ordinary employment relation as that of the relation of partners. The automobile buyer in the field, using his own car and at his own expense, had an absolute freedom of decision to buy or not to buy; this relation may exist between an employee and his employer, but it is much more common in the relation of partners, or it might well and better indicate that the buyer is an independent contractor.

■ The relation between the parties in this case which we are unable to classify as one that commonly, if ever, exists between an employer and an employee, is the agreement that, in case of loss, there was to be a division of the losses. There were sales at a loss, too. We may follow the theory that the profits are the measure of the wages to be paid by the employer to the employee, (though it be presumptive, but not conclusive, evidence of a partnership) but when we reach the theory of the division of the losses as the payment to an employee we are then not readily able to conceive of the existence of the relation of ordinary employment. Fahey v. Sapio et al., 5 Cir., 30 F.2d 330, 332.

There are two legal principles brought into conflict in this case: (1) (By the Government) that the term "employee" should be construed in such a manner as to accomplish the purpose of the Social Security Act and that "The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." Helvering v. Davis, 301 U.S. 619, 641, 672, 57 S.Ct. 904, 909, 81 L.Ed. 1307. See also United States v. American Trucking Ass'ns, 310 U. S. 534, 544–548, 60 S.Ct. 1059, 84 L.Ed. 1345; Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60; General Wayne Inn v. Rothensies, D.C.E.D.Pa., 47 F.Supp. 391; Stone v. United States, D.C.E.D.Pa., 55 F.Supp. 230; (2) (By the defendant) that tax statutes should be strictly construed and unless the sovereign power has clearly indicated the inclusion of a person, a certain contractual relation, or a business, the burden of the statute should not be imposed. Sugg v. Hopkins, supra.

■ "While there is some contrary authority, the general rule is that statutes providing for taxation are to be construed strictly as against the state and in favor of the taxpayers." 61 Corpus Juris 168, § 119, Part III, Liability of Persons and Property, under topic "Taxation."

The Unemployment Compensation Law of Kentucky, also with humanitarian object like the instant statute, was gauged strictly because it was still a taxing statute. Barnes v. Indian Refining Co., 280 Ky. 811, 134 S.W.2d 620.

■ The use of the words "general welfare" in our Federal Constitution (in the preamble and in article 1, section 8) for the source and authority of legislation on social justice, is both fortunate and timely.

But, should there be born from this new phase of our Federal Constitution a liberal interpretation of tax statutes having humanitarian considerations, such as the one at issue here providing revenue for social security? No, we do not think the prudent rule of strict construction of tax statutes should be readily repudiated. To establish such a trend would be to create an avenue for the judicial to usurp seriously the legislative. Consequently, the statute in this case is applicable only when the relation of employer and employee clearly exists.

There are large classes of causes excluded by the statute even when the relation of ordinary employment exists. Agricultural labor, domestic service in a private home, and six other instances are excluded. § 1107, Definitions, (c), (1) through (8) inclusive, Title 42 U.S.C.A. Since the Congress made substantial exceptions, we believe a rule of liberal construction by the courts with the view of bringing as great a number of classes as possible under the tax burden is condemned inferentially, and the strict rule is indicated.

The relation of employer and employee in this case is not clear-cut. The relation is in the debatable zone of several contractual relations. From the facts established in this case, it is definitely clear that the relation of employer and employee does not preponderantly exist.

■ Another strong reason to lead us to our conclusion in this case is that an employee is subject to the will and control of the employer—not only as to what should be done, but how it should be done—and certainly here the facts show that Yearwood and Glasscock had no such control, for the ten buyers in the field were masters of themselves in the purchase of cars. To elaborate these facts, we find the following: (1) Each buyer worked when he desired; (2) each buyer worked where he wished— that is, he selected the territory in which he chose to operate on a given occasion; (3) each buyer purchased such car or cars as he cared to purchase at the price or prices he decided to pay; (4) after a car was purchased, the buyer either brought the car to Shreveport for sale on the lot of "Boyd Yearwood—Used Cars" or sold it at some point between the point of purchase and Shreveport, it being optional with the buyer which method of sale he adopted, and in the event of a sale elsewhere than the lot of Boyd Yearwood— Used Cars the sale price was fixed by the buyer without direction or control by Boyd

Yearwood—Used Cars; (5) in the course of their work the buyers traveled over whatever routes and in whatever conveyance they selected, and at their own expense; (6) the buyers were not obligated to devote their full time to the purchase and sale of cars financed by Boyd Yearwood—Used Cars and were, in fact, at liberty to make similar arrangements with other persons independent of the arrangements had with the partnership of Boyd Yearwood—Used Cars; (7) independently of the arrangements had with the partnership of Boyd Yearwood—Used Cars, that partnership bought and sold other cars with which the buyers had no connection. The prime requirement for the existence of the relationship of employer and employee—the right of control—was completely absent.

■■ The Circuit Court for the Tenth Circuit, in the case of Jones v. Goodson, 121 F.2d 176, at page 179, has well said:

"Little difficulty has been encountered in defining in the abstract the relationship of master and servant and that of an independent contractor, and in drawing the line of distinction between the two. The relationship of master and servant exists where the employer has the right to direct and control the method and manner in which the work shall be done and the result to be accomplished, while an independent contractor is one who engages to perform service for another according to his own method and manner, free from direction and control of the employer in all matters relating to the performance of the work, except as to the result or the product. The line of separation between the two is the degree of direction and control. In the former direction and control cover both method and manner of doing the work and the result produced; in the latter direction and control are limited to the result and do not apply to the method and manner of the service rendered. Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; Casement v. Brown, 148 U.S. 615, 13 S.Ct. 672, 37 L.Ed. 582; Southern Construction Co. v. State Industrial Commission, 112 Okl. 248, 240 P. 613; Oklahoma Publishing Co. v. Greenlee, 150 Okl. 69, 300 P. 684; Drumright Gas Engine Co. v. Sherrill, 173 Okl. 147, 46 P.2d 921; Manahan Drilling Co. v. Howard, 181 Okl. 124, 72 P.2d 802. But courts have met trouble in making application of these general abstract principles to variant facts."

The facts and the conclusions in the following cases will show, by comparative analogy, that the buyers in this case might be independent contractors, creating then a relation closely akin to partnership, but certainly excluding them as employees: McCraner v. Nunn, 129 Kan. 802, 284 P. 603, 604; Peters v. California Building-Loan Ass'n, 116 Cal.App. 143, 2 P.2d 439, 442; Kassela v. Hoseth, 217 Wis. 115, 258 N.W. 340; Garcia v. Vix Ice Cream Co., Mo.App., 147 S.W.2d 141, 143.

Now, and finally, the following cases, dealing with the particular tax under consideration, will support the above conclusion: Indian Refining Co. v. Dallman, D.C., 31 F.Supp. 455; Id., 7 Cir., 119 F.2d 417; Barnes v. Indian Refining Co., 280 Ky. 811, 134 S.W.2d 620; Deecy Products Co. v. Welch, 1 Cir., 124 F.2d 592, 139 A.L.R. 916; United States v. Griswold et al., 1 Cir., 124 F.2d 599; Kentucky Cottage Industries v. Glenn, D.C., 39 F.Supp. 642. In the case of Carroll v. Social Security Board, 7 Cir., 128 F.2d 876, at page 878, we find: "It is pointed out that an essential characteristic of the relationship of employer and employee is that the former retains the right to control and direct the individual who performs the services, both as to the result to be accomplished by the work, and as to the details and means by which that result is accomplished. Undoubtedly, this proposition generally is sound and sustained by the authorities."

In these cases, above cited, it is significant that between the parties there was a want of a proprietary interest in the merchandise handled and sold. In the contingency that we are to be declared in error in our conclusion that the relation of partnership exists in this case, then to reach the conclusion that the buyers were independent contractors and not employees would not necessitate the proof of a common proprietary interest of the buyers in the cars bought and sold.

The Government's final position is that in the case that we were to rule that the relation of ordinary employment does not exist, plaintiff is not entitled to recover, as there is no showing that the taxes were not paid in whole or in part from moneys belonging to and withheld from the buyers and Glasscock. Consequently, if a sufficient amount to pay the taxes, or a part of them, was actually withheld, and if the buyers and Glasscock are not employees, then it follows that the buyers and Glasscock are the proper parties to sue for any amounts withheld. Further, if recovery is allowed in this suit, Yearwood will be ab-

302

solved of all liability for any action in recovery by Glasscock and the buyers, as Section 802(a) of the Act provides that the employer as the one who pays the tax is indemnified against the claims of any person for the amount of any such taxes paid. The Government further says in its brief:

"The Regulations require that the refund claim of plaintiff must show that he has repaid the tax collected, or has secured from Glasscock and the buyers a consent in order for a refund to be made to him. Article 504(e), Treasury Regulation 91. There is nothing in the record to show that the claims met either of these requirements. Furthermore, the Regulations provide that the 'employee' may file a claim for refund in his own name if he has not been reimbursed for the taxes deducted from his wages. If recovery is allowed here on the present state of the record there is the possibility that the Government will be twice liable for the same taxes. We have no objection, however, to the case being reopened for the introduction of further evidence showing the true facts relative to withholding."

Accordingly, since we are allowing recovery from the Government of the amounts of money previously paid as taxes, we shall order a reopening of the case for the introduction of evidence by Glasscock, by any of the respective buyers, and by Yearwood, so that the manner of payment, and by whom, may be thoroughly established.

Following a hearing on this order, judgment will finally be signed in accordance with this opinion.