## DAIGLE v. CRESCENT CITY GARAGE, Inc., et al.*
### No. 16801.

Court of Appeal of Louisiana. Orleans.
May 2, 1938.

John May, of New Orleans, for appellants.

Yarrut & Stich and Emerson Bentley, all of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, appearing individually and on behalf of her three minor children, brought this suit to recover compensation against the Crescent City Garage, Inc., and its insurance carrier, Travelers Insurance Company, for the death of her husband, Maurice Charles Leonard, an automobile mechanic, allegedly in the employ of the first named defendant, who was fatally injured while engaged in repairing a truck.

The defense to the action is that the deceased, at the time he received his injuries, was not acting within the course or scope of his employment but, on the contrary,

was engaged upon a private mission and was performing work for one of his own customers.

There was judgment below in favor of the plaintiff, awarding her compensation against the defendants in solido for 300 weeks at $10.72 per week. The defendants have appealed, and the plaintiff has, by way of answer, requested an increase in the award.

The Crescent City Garage, Inc., is a Louisiana corporation operating in the city of New Orleans where it conducts a general garage business for the storage, washing, polishing, cleaning, enameling, and lubricating of automobiles. In connection with the main enterprise, it also sells tires, batteries, gasoline, oil, and motor accessories and performs automobile repair work.

From 1921 to 1925, the repair shop of the garage was operated by one Dunn as a distinct and private business of his own, but thereafter the defendant, recognizing the advisability of offering a more responsible and complete line of service to its patrons, employed M. C. Leonard as its mechanic and placed him in full charge of its repair department. The arrangement between the garage and Leonard was that it would supply the workshop, materials, etc., for the repair of automobiles belonging to its patrons; that Leonard would perform the mechanical work, and that, in recompense for his services, he would receive one half of all of the profits of the operations. While it does not clearly appear that there was any definite understanding as to Leonard's hours of work, it may be justifiably inferred from the evidence that he was expected to be on hand during each day to perform such labor as might be needed by the garage's customers and that the garage had the right to supervise and control the work done by him.

On the morning of the fatal accident, Leonard had been advised, by telephone call to the garage, that one of the trucks of L. Frank & Company, produce dealers of New Orleans, had broken down at the corner of Josephine and Freret streets and he was summoned for the purpose of repairing it. While he was working on this truck, it caught on fire and he received severe burns which later caused his death.

■ We are told by counsel for the defendants that the trial judge, after the case was submitted to him for decision, was uncertain as to whether Leonard was an employee of the garage or whether he was in partnership with it insofar as the automobile repair business was concerned. Counsel further states that because of the doubt expressed by our brother below, he has raised in this court the question of the legal relationship of the parties. The defendants judicially admitted in their answer that Leonard was an employee of the garage, but counsel maintains that, notwithstanding this, he is entitled to judgment if, in truth, the evidence shows that a copartnership existed. We do not think so. It is too well settled to require the citation of authority that parties litigant are bound by their judicial admissions. Aside from this, we see nothing in the agreement which would persuade us to declare that it was a contract of copartnership. There is no reason to suppose that Leonard was to bear any part of the loss of the venture. He was merely an automobile mechanic. The garage was engaged in the business of repairing automobiles and, instead of paying him a stipulated wage, it elected to base his compensation upon a division of profit. The sharing of profits is the only feature of the agreement which bears any resemblance to a copartnership and this alone is insufficient to create such a contract. See Collom v. Bruning, 49 La.Ann. 1257, 22 So. 744, and Boutte v. Roland & Son et al., 15 La.App. 530, 132 So. 398.

■ Being, then, of the opinion that Leonard was the employee of the garage, we approach the more serious question presented, i. e., whether he was engaged in that employment at the time of the accident.

The defendants state a most unusual situation existing between Leonard and the garage. They say that, at the time he was employed, it was understood that his duties would not be confined to customers of the garage and if he was able to obtain patrons of his own, he would be entitled to perform whatever services they desired during his working hours and retain the entire profit of such pursuits for himself. In other words, it is claimed that Leonard was only a part time employee; that he was engaged in two businesses, one as servant of the garage and another as an independent contractor of his own customers; that L. Frank & Company, whose truck was involved in the accident, had employed Leonard individually; and that the garage had no right to receive any portion of the compensation he would have received for the

repair work he was doing at the time he was injured.

In substantiation of this defense, the defendants rely upon the testimony of the secretary and general manager of the garage, Mr. Charles G. Alba, and on certain account books kept by Leonard in his own handwriting. Mr. Alba stated, in substance, that, at the time Leonard was employed, it was understood that he should do all the repair work of the patrons of the garage and that he was also permitted to retain for himself whatever business his individual customers would give him. The arrangement, as explained by the witness, was that all persons coming into the garage to have their automobiles serviced or stored would automatically become the garage's customers, but that any persons particularly recommended to Leonard for repair work and who specifically requested his services would be considered to be his customers. He further says that the garage's facilities, including its credit, were placed at Leonard's disposal for the performance of the work he rendered to his own patrons; that L. Frank & Company was his personal customer; and that the garage at no time participated in the profits on the work performed for that concern.

The testimony of Mr. Alba, respecting the agreement, reveals a most exceptional and anomalous business arrangement between the parties as it is plain that, under the circumstances, Leonard, in so far as his private repair work was concerned, was a competitor of his employer. However, when we consider, as explained by Alba, that Leonard was a trusted employee, enjoying the high esteem, respect, and friendship of his employers, we realize that it is entirely plausible that such an arrangement might subsist.

The fact that the agreement was actually made, becomes clear upon an examination of the account books kept by Leonard, which were offered in evidence by the defendants in support of Mr. Alba's statement. These exhibits consist of three cashbooks numbered 6, 7, and 8, which the defendants contend reveal a list of all of the repair jobs performed by Leonard for the customers of the garage from April, 1935, through June, 1936, and a journal book, in which, the defendants claim, is to be found the separate notations of the work done by him for his individual patrons during the same period. It is also said that the notations appearing on the pages on the left

side of the cashbooks disclose the debits of Leonard to the garage, not only for one half of the profits of the work done by him for customers of the garage, but also for material and other equipment which he obtained from it in order to perform the repair services for his patrons.

Counsel for the plaintiffs, however, argue that the books offered by the defendants do not sustain Mr. Alba's testimony and that the cashbooks merely show the work paid for by cash, whereas the journal covers the credit jobs. They further maintain that Mr. Alba really does not know what the arrangement was between Leonard and the garage, inasmuch as his brother, Mr. Edward Alba, conducted most of the negotiations with Leonard leading up to the employment.

As a result of our scrutiny of the cashbooks and the journal, we are convinced that the defendants' contention, with respect to Leonard's performance of work for his own customers apart from his duties as the employee of the garage, has been sustained. These ledgers, while they represent a crude system of bookkeeping, are sufficient to exhibit that Leonard did operate an automobile repair business for his own account which was separate and distinct from his employment at the garage.

Since we are convinced that the defendants have proved that Leonard was conducting a private business for his own account in connection with his employment by the garage, we next consider whether L. Frank & Company was his individual customer or whether it was a patron of the garage.

Counsel for the defendants, in contending that L. Frank & Company was the customer of Leonard, relies upon the testimony of Alba and the account books offered in evidence. He claims that the books plainly reveal that Leonard's private patrons are to be found in the journal, whereas the garage's customers are listed in the cashbooks, and he points out that the name "L. Frank & Company" is shown only in the journal.

In considering, first, the testimony of Mr. Alba on this question, it should be noted at the outset that he stated that L. Frank & Company was a joint customer of the garage and Leonard. He explained that, if any mechanical work was needed, L. Frank & Company was Leonard's customer for that purpose but that, when a wash, lubricating, or tire repair job was performed, it

was the garage's customer. It is obvious from the foregoing that Mr. Alba did not, in fact, know the status of L. Frank & Company, for in the beginning of his testimony, in speaking of the agreement between the parties, he avouched, without qualification, that the arrangement was that if the patron originally contacted the garage, it would become its customer and not Leonard's. He does not attempt to say whether L. Frank & Company initially brought its business to the garage or whether the business was given to Leonard, and it is plain, from his silence on this point, that his deduction that that customer was Leonard's personal patron is not based upon fact but upon his examination of the journal showing entries in the name "L. Frank & Company" from which it might be argued that Leonard claimed that concern as his individual customer.

Assuming, at this point, that the entries are sufficient to denote that Leonard claimed L. Frank & Company as his customer, it does not necessarily follow, as a legal result, that he was entitled to its business. The plaintiff, in an attempt to establish the relation of the patron to the garage, tendered the evidence of Mr. Charles Frank and Mr. Sol Hockstein, officials of L. Frank & Company, who stated that they at no time considered that they were giving their business to Leonard, but that, on the contrary, their company was dealing exclusively with the garage. Mr. Frank says that he would not have employed Leonard individually as he had no assurance of Leonard's financial responsibility. In corroboration of his contention, that his company was a customer of the garage, invoices received by him bearing the letterheads of the garage were produced in evidence.

In the light of the foregoing testimony, it is clear that, irrespective of whatever right Leonard might have thought he had to the business of L. Frank & Company, that concern at all times considered that it was contracting directly with the garage. Hence, in the absence of probative testimony that the garage recognized L. Frank & Company as Leonard's individual patron, we opine, in view of the conditions of the original agreement and the evidence of the officials of L. Frank & Company, that the latter was in legal contemplation the customer of the garage.

Apart from this conclusion, we are not persuaded that all entries made by Leonard in the journal kept by him pertained solely to his personal customers. For instance, we find the names Winstein, Viosca, Daly, Fox, Bright, Bonnecaze, Pedric, Ragas, Lucero, Frost, Hennessey, Monager, Dunn, Cancienne, and King entered in both the journal and the cashbooks. As a consequence, we are unable to evince what is the exact true state of affairs with respect to these accounts. It may be that Leonard claimed patrons' business to which he was not entitled under his agreement with the garage. Mr. Edward Alba, who checked Leonard's accounts, could have enlightened the court on this point, but he was not called as a witness by the defendants.

■■ Counsel for the defendants tells us, in argument and in brief, that the burden of proof was upon the plaintiff to show not only that Leonard was an employee of the garage, but also that he was injured while in the performance of duties in the course of his employment. There can be no doubt that such is the law, but we are satisfied that the plaintiff in this case has not only proved the employment, but has made a strong prima facie showing that Leonard was injured while performing work in the course of his duties. The accident occurred during usual working hours and the officials of L. Frank & Company have stated that they were customers of the garage. Upon such a showing, the burden of proof shifted to the defendants to establish their defense in order to escape liability.

■ The evidence of Mr. Alba and that of a young lady employee (whose statement is unimportant), as well as the account books of Leonard, constitute the defense in the case. Although Mr. Alba stated on the witness stand that all of the entries concerning customers of the garage were taken by it from the books of Leonard and transferred to its general ledger, the defendants failed to produce the ledger. If, as contended for, L. Frank & Company was not a customer of the garage, this fact could have been established by its account books. Their failure to produce them raises a presumption that the contents would have been unfavorable to their case. Furthermore, while Mr. Charles Alba testified that his brother, Mr. Edward Alba (who was most familiar with the agreement between Leonard and the garage), was too ill to come to court, there is no explanation given as to why his evidence could not have been taken by deposition

de bene esse. All of these factors tend to destroy the correctness of the defendants' resistance and, in view of the strong showing made by the plaintiff, we have no difficulty in declaring that the district judge was right in deciding in her favor.

■ The only other question in the case is whether the plaintiff is entitled to an increase in the award. She testified that her husband furnished her with $25 each week with which to run her household, and she has also produced evidence to show that the average wage of an automobile mechanic varies between $30 and $35 per week. The defendant, from their tabulation of the books kept by Leonard, say that Leonard's average weekly earnings were $16.-65. Since it is our view that the cashbooks, while not accurate, represent a fair average of his share of the profits for services performed by him for the garage, and forasmuch as we are convinced that he did derive other income from repair work he obtained from his private customers, we believe that compensation based on an average weekly earning of $16.65 is approximately correct.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.