The opinion of the court was delivered by
Nicholls, C. J.
Plaintiff alleged that in July, 1895, he entered into a verbal contract of copartnership with the defendant for an indefinite period under the firm name of H. J. Bruning.
That the purpose for which said partnership was entered into was general contracting, and particularly with a view of securing contracts from the city of New Orleans. That the profits and losses of said copartnership were to be divided equally, and of the capital, plaintiff was to devote his time and energy to the furtherance of the *1258 interest of the enterprise, to arrange and prepare the bids, make., contracts for material and labor and supervise the work. That. Bruning was to furnish ten thousand dollars capital in cash. .,
That plaintiff had faithfully complied with his part of the contract,, but that said Bruning had not done so, having furnished only about three thousand dollars of the capital. That Bruning had, at all times, had control of all the assets, books and accounts of said partnership.
That among other work done by said partnership were the following:
Repaired Julia street between Rampart and Dryades streets in New Orleans.
Paved Willow street from Julia to Lafayette, with shells;
Furnished filing cases in Assessor’s office at the Oity Hall.
Furnished and set new boiler and pumps in parish prison.
Building bridge at the intersection of Esplanade and Broad streets.
Building bridge at the intersection of Claiborne and Ursuline streets.
That the partnership had been successful and plaintiff had made demand on said Bruning for an account of the condition of the same, but Bruning had refused and continued to refuse to render such an account; that of the profits he had received only about one hundred and eighty dollars, and that his interest in the partnership was more than two thousand dollars, exclusive of interest. That he was no longer desirous of continuing said partnership, and had notified Bruning accordingly; that Bruning should be made to render an account, and the- partnership should be dissolved and its affairs liquidated. ' ■ . .
He prayed that Bruning be ordered to file an account;' that the partnership be dissolved; that plaintiff be appointed liquidator of same and that he have- judgment to the amount shown, to be due him by defendanD in the liquidation proceedings with interest.-
Defendant, after pleading the general issue, specially denied that he ever entered into any contract of copartnership with the plaintiff at any time or place, or of any nature or kind whatever.
Judgment was rendered by the District Court in favor of the plaintiff and against defendant, “ decreeing the dissolution and liquidation of the partnership existing between the said parties under the name of H. J. Bruning, ordering the plaintiff be appointed liq- *1259 uidafcor of said partnership upon his furnishing bond with security to the amount of one thousand dollars, the amount of the bond to be increased should the court deem it necessary.”
Defendant appealed suspensively from this judgment.
Plaintiff relies upon his own testimony, that of Fuller, McDonald and one Schelin to establish his claim that there exists a partnership between himself and the defendant. Not a single contract orr subcontract has been shown to have ever been made wherein the-name of the plaintiff appeared, or wherein the latter was known as-one of the contracting parties by those who entered into them.
Fallon, to whom a subcontract was given for the brick work andl resetting of certain boilers included in a contract made in the name of Bruning, says that the subcontract was made with him. through Oollom, but he does not assert or pretend that it was made in the name of any partnership. He does say that after the contract was made Oollom represented himself to him as being a partner of the defendant, but this was never done in the latter’s presence, nor were such representations shown to have ever come to the latter’s, knowledge. All payments to Fallon were made by Bruning.
Schelin, a brother-in-law of the plaintiff, testified that he had! delivered to Bruning a letter which he had received from Oollom for-that purpose; that after reading the letter Bruning told him “that-when Mr. Collom got well (he was then sick) to come down and he-would made a settlement with him.” In the letter thus delivered; plaintiff wrote to the defendant that he had concluded it advisable that their business relations should be brought to a close, as their ideas on business matters did not harmonize, as well as for other reasons useless to enumerate. Continuing, he said: “We have now:’ completed all our contracts excepting the one for constructing at. bridge at Ursuline and Olaiborne streets. I have been waiting for the past two months for you to make some effort to commence this work, but you have not done so for reasons you have not explained tome. However, I have formed my own conclusions in the matter. The profits in this particular contract will amount to not less than twenty-eight hundred dollars, and could b,e completed in thirty days-after the material is- placed upon the ground as the matter now stands (through no fault of mine, however). I consider that I am justly entitled to my share of the profits in this, as well as in- the balance of the work now completed, making in all due- me, two> *1260 ■¡thousand seven hundred and thirty-eight dollars. This does not include what profits may eventually accrue from the boiler contract. .1 make the following statement from memorandum kept by me which I believe to be correct:
Profits on willow street contract.. $622
Profits filing cases at City Hall. 545
Profits Julia street contract. 265
Profits Broad street bridare. 1,245
Profits Hrsuline street bridge contract. 2,800
$5,477
'“lOne-half of the above belongs to me. Hoping the above will ■meet with your approval I will consider it a favor if you will advise me at how early a date you can make it convenient to make settlements. I am,” etc.
In this letter the writer refers to “business relations” between himself and defendant and claims one-half the profits, but he nowhere claims the existence of a “ partnership ” between them. The .answer to Schelin by defendant that he would make a “ settlement ” thereafter with the plaintiff does not carry with it therefore the conclusion that the latter would have us draw from it.
The testimony of McDonald was to the effect that he was foreman •over the work done in execution of the contract referred to as that of the Broad and Esplanade Street Bridge. He said he understood that he was working for Oollom & Bruning. Oollom was the man who employed him and gave him his instructions and paid him. The first time he saw Mr. Bruning he was out at the work .standing by himself; he passed near Bruning, when the latter addressed him, saying: “ Has my partner, Mr. Oollom, been out here this morning? ” He answered no, but that he would be there .after a while; Bruning asked him about what time Oollom generally got out there; he answered “ aboht 9 o’clock in the morning and again in the afternoon,” and he (witness) then walked off; .Bruning frequently was out where work was going on, but never referred him to Oollom for anything.
The plaintiff’s own testimony was substantially as follows:
“ On the first day of July, 1895, Mr. Bruning suggested to me that we engage in the business of contracting. I asked him how much ready capital he had, or how much money he had on hand in order ■ to prosecute the business. He stated that he had about ten thousand dollars idle that he could use, and if I would prepare the bids, try *1261 and secure the work, that he would furnish the ten thousand dollars capital, and also furnish the necessary bonds required by the city on-contracts. I was to superintend the construction of the work, make-all contracts for material and labor and we were to divide the profits and losses, whatever they might be. Upon the strength, of that we secured the contracts contained in the statement.” Referring to the Willow street contract, he said that he superintended the construction of the work and did all that was necessary to secure the material and labor; that there was no foreman on the work; that a portion of the Julia street contract (the paving) was “ sublet;” that the balance of the work he superintended; that he, himself, made-the estimate in the matter of the contract for filling the cases in the-assessor’s office, and a contract was made with a Mr. Manske-to build them and put them in place; that that was all the labor attached to it; that he and Brunipg together made the contract with Manske; he was present when the contract was made. With reference to the contract for the bridge at Broad and Esplanade streets, he said he had a foreman at that work (McDonald), but he was out, at the work nine or ten hours every day. With respect to the contract for the boilers at the court house and jail, he said that-the brick work and resetting of the boilers was “ sublet” to Fallon; that he, himself, superintended the balance of the work, and that the contract for the Ursuline and Claiborne street bridge was let in its entirety to William Gause. He said that he drew up the bids for these various pieces of work, ordered all the material and approved all the bills before they were paid. On cross-examination, plaintiff stated that defendant made the proposition to him to go into business together; that they discussed the matter in a number of interviews, but that no one was ever present at these interviews. Neither Fallon, McDonald nor Schelin pretend to know anything of the terms of any arrangement between the plaintiff and the defendant. Defendant, in his testimony, contradicts the .plaintiff positively in, every particular tending to show the copartnership claimed. He says that the plaintiff was in his employ on a salary of fifty dollars per month, commencing with work on the first contract, and he testified that he has been fully paid. Defendant’s brother testified to having heard the arrangement which was made between the parties when made; that plaintiff was employed by the defendant at a monthly salary of fifty dollars per month.
*1262 Leaving aside plaintiff’s testimony, squarely contradicted by that of defendant and his brother, the demand made herein rests upon the testimony of McDonald, that Bruning had, on one occasion, asked him “ whether his partner, Oollom, had been out at the works •on that particular day;” on Pailón’s testimony that the plaintiff, in ■conversation with him (but out of the presence of Bruning) referred to himself as being Bruning’s partner; on Schelin’s testimony that on .handing the defendant the letter written to him by the plaintiff, and •after reading it, Bruning had answered him (the witness) that if Oollom would go down to see him when he got well “he would make settlement with him,” and upon the fact that he actually rendered •services in connection with the contracts referred to in plaintiff’s pleadings.
None of the bills which plaintiff declares he approved for payment ;are shown to have been made out otherwise than as against Bruning, -and none of the parties who held them were produced to show that plaintiff was known to them in any of these different transactions as ¡under any liability upon the same. Plaintiff assigns as a reason for this that the firm name was “ H. J. Bruning.” Plaintiff produces no one other than McDonald (and he under very unsatisfactory testimony) who ever heard Bruning refer to the plaintiff as his partner, and no one who ever heard the plaintiff in presence of the defendant claim to stand toward the latter in the relations of a partner. It is strange that at some time or other some third person dealing with these parties should not have been placed in a position to know and to testify how they stood toward each other. Partnership is á special contract dependent for its creation upon the consent of the parties (O. 0. 2806), that that particular relation should be established between them. The mere fact that two persons may both be interested pecuniarily in the same business venture, and that each give to it equally his time and attention, by no manner of means •carries with it as a .matter of law the conclusion that they stand •toward each other as partners. Consent shown by one person who has furnished the capital by which certain operations are carried on that another who has employed his time, his skill and given his services for •their success should receive one-half of the profits to be derived from the same is perfectly consistent with the fact that the latter person stands toward the former as a mere employee. Contracts of that .character are formed every day, the extent of the participation in the *1263 profits varying in the different cases. It is possible that defendant may have consented, as plaintiff declares, that the latter should, in consideration of his services, divide equally with him the profits to be derived from the contracts entered into between Bruning’ and the city of New Orleans, but the trouble is that no one but plaintiff himself has testified to that fact, and he is flatly and directly contradicted •by the defendant and his brother. It is true that plaintiff declares in his pleadings (and so testifies also) that it was agreed between de - fendant and himself at the inception of the relations between them that they were to share equally any losses which might result from the contracts referred to, but the trouble is that no one but the plaintiff seems to have known of any such*arrangement, and defendant swears positively that such was not the fact.
Plaintiff’s admission of liability for losses was made after the situation had disclosed the fact that there were no losses (as he himself stated in his testimony) to share. Had such losses occurred, and •had defendant sought to have held plaintiff liable for one-half of the same, the position of parties would have been reversed and defendant’s claim would have failed for want of proof. The whole pecuniary responsibility to result from unsuccessful ventures in the matter of these contracts would have rested upon the defendant. Plaintiff’s liability upon the same was. known to no one, and could have been made available to no one, and the evidence in the case makes it very doubtful whether plaintiff’s pecuniary condition was such as would have enabled him to respond to any liability had such arisen.
Parties who thus stand in the background while chances are unknown and uncertain should be prepai’ed when they come to the front to sustain their pretensions by clear proof. So long as men deal in important matters in the loose manner which plaintiff-by his own showing testifies he has done with the defendant in his business arrangements, they must not be surprised to meet with difficulties and losses, even with well founded rights. Courts can not rectify the results of gross carelessness or repair the effects of over-confidence.
Granting all that plaintiff says to be true, we can only come to judicial knowledge of its truth by the application of judicial tests. So tested plaintiff’s demand must fall.
We do not feel justified, under the very slight evidence adduced-to *1264 show a partnership, in holding that such a partnership existed and to reason thence by presumption to an equality of interest in the profits.
Por the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff’s demand be rejected and his suit dismissed without prejudice to any right he may have to claim from the defendant remuneration for his services.