## VASCOCUE v. COLLINS. *
### No. 4737.

Court of Appeal of Louisiana. Second Circuit.
Nov. 3, 1933.

C. B. Prothro, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

*Rehearing denied December 1, 1933.

**TALIAFERRO, Judge.**

Plaintiff, a carpenter by trade, while assisting in the erection of a residence for J. M. Doll, in the city of Shreveport, fell from a scaffold to the ground, a distance of some twenty fee, receiving serious bodily injuries. He alleges that defendant, C. A. Collins, had contracted with Doll to erect said residence and instituted this suit against him as employer to recover compensation.

Defendant denies that plaintiff was ever employed by him. He avers that he was approached by plaintiff, Jesse N. Meeks, Mat Hart, and A. M. Dickison, and was by them informed that they wished to secure the contract to erect the Doll residence, he furnishing all material, but had been unable to do so without the giving of bond, which they were unable to provide; that Doll would execute the contract without the bond if defendant became a party to such contract; that said parties also requested him to act as bookkeeper and cashier for them while doing this work and they would pay him 20 per cent. of the contract price; that, acting for said parties (referred to as a partnership), he, with said Meeks, contracted with Doll for the construction of said building for the sum of $1,920; that Dickison left Shreveport and W. T. Sibley became a member of the partnership in his place. That, in accordance with their previous agreement, defendant entered into a written contract with said Meeks, Sibley, Hart, and plaintiff herein, whereby they assumed all obligations under the contract between Doll, as owner, and Meeks and defendant, as contractors, referred to above, and that they were to receive the consideration of the original contract and pay defendant 20 per cent. thereof; that said parties performed said contract and defendant exercised no control whatever over them or over any other person who worked on the job; that plaintiff and the other members of the partnership worked when and how they pleased, hiring such additional labor as they saw fit, and that he (defendant) had nothing to do with the work other than keeping books for the partnership; that plaintiff was an independent contractor when injured.

The lower court rejected plaintiff's demands, and he has appealed.

The evidence supports the averments of defendant's answer to the effect that Meeks, Hart, Dickison (succeeded by Sibley), and plaintiff, approached defendant on the subject of a contract for the erection of the Doll residence, and that defendant loaned himself and his credit standing to the project to the extent and for the purposes declared in his answer to this suit. He and Meeks signed the contract with Doll to furnish all necessary labor in the erection of the residence for a price of $1,920, and thereafter the following agreement was signed by defendant, Meeks, Hart, Sibley, and plaintiff:

"We, the undersigned, Jesse Meeks, Clarence Vascocue, W. T. Sibley, and Mat Hart, hereby agree to build a house for Mr. Jno. Doll, according to plans and specifications, for the sum of $1250.00. This also includes a one-story garage and room. There is a further cash consideration of $670.00 to cover all other labor as agreed with Doll in his contract. All to share and share alike according to days worked.

"We further agree to carry C. A. Collins for one equal share.

"When house is finished and accepted by owner we agree to sign a release in full for all labor."

The work was done and the building completed by Meeks, Sibley, and plaintiff (until his injury), with some additional labor. They were regularly paid $5 per day by defendant, to whom Doll advanced money from time to time as the work progressed. Defendant had no personal contact with the work, beyond visiting it occasionally, keeping books, and taking care of the weekly payrolls. He hired no one, discharged no one, and fixed no one's rate of pay. In fact, he received nothing for his connection with the project, as the entirety of the contract price was consumed by payments to the workmen before the building was completed. The agreement, quoted above, clearly discloses that Meeks, Hart, Sibley, and plaintiff were the ones who obligated themselves, as regards each other and defendant, to build the residence for Doll. Doll looked to defendant for completion of the work, according to the agreement he had with defendant and Meeks. For defendant's assistance to them and for the services he was yet to render, these parties agreed to "carry" him for "one equal share." Had the arrangement worked out as they all contemplated, defendant would have received $384; but as it terminated, funds were insufficient to pay the contractors the stipulated $5 per day until the building was completed. Nothing was left for defendant.

Meeks and Collins had been associated as partners in the execution of other building contracts, and in the performance of the contract for the erection of the Doll residence, Meeks, by agreement with his associates, acted as spokesman or manager in directing the work and employing additional labor. Plaintiff argues, from the above-related facts, that he was under the direction and control of Meeks, the superintendent of Collins. This argument would be at least persuasive, but for the clearly established facts negativing any such relation between Meeks and defendant, as regards the Doll job.

It might be well to mention, as having a significant bearing and throwing light upon

the business relationship and association of plaintiff with his herein named co-workers, that they had erected at least one other building as contractors before beginning work on the Doll residence. The inference is that there were existing reasons why they could not work for a definite wage of $5 per day, and to circumvent such reasons, they associated themselves in a sort of partnership status in order to secure contract work, even though ultimately their average daily wage might not equal this amount, and would have contracted directly with Mr. Doll, but for his insistence upon bond, which they were unable to provide.

Whether a person performing labor or service for another occupies the status of an independent contractor, or not, must be determined from the nature of the contract, the character of the labor or service performed, and the facts and circumstances bearing upon the undertaking. Act No. 85 of 1926, p. 113, defines an "independent contractor" to be: "* * * any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished."

Applying the essentials of this definition to the plaintiff's case, we find that he falls squarely therein. He and his associates on the job were to receive a definite amount of money to perform a definite line of work to accomplish a specified result, to wit, the completion of the Doll residence, and they were under the control of no one as to the means by which such result was accomplished.

To hold defendant responsible to plaintiff for compensation, we would have to hold him to be the employer of all four of the partners who built the house. The record as a whole leaves no doubt that he did not bear that relation to any of them.

Judgment affirmed.