A solidary judgment for $2,000 against defendants John G. Brewer and Harry L. Cloud is prayed for by Lesley E. Reel in his petition of this action.
The allegations upon which the prayer is predicated are that plaintiff sold and delivered to defendants between December 3, 1940, and December 23, 1940, both dates inclusive, 4154.5 yards of gravel for the price and sum of $5,193.11; and that there have been payments on the account totaling $3,193.11.
Defendants do not dispute the sale and delivery by plaintiff of gravel in the amount alleged. Neither do they question the correctness of the asserted balance. *Page 100 
The defense of Brewer is that Cloud alone is responsible for the indebtedness.
Cloud, on the other hand, denies that he is indebted to plaintiff; and he avers that his connection with the purchase transaction was solely as agent for his codefendant Brewer. Alternatively, in the event that he is liable at all to plaintiff, he shows that his liability is joint with Brewer, and is only for one-half of the amount demanded.
There was judgment against Cloud for the full amount of plaintiff's claim, or $2,000. The court rejected the demand as against Brewer.
Defendant Cloud appealed. An appeal was also perfected by plaintiff, with reference to which his counsel, in their brief, remark: "Since a judgment cannot be amended as between appellees, it was necessary for the plaintiff to protect himself by taking an appeal so that the Appellate Court might, if it agreed with counsel for Cloud, be in a position to render judgment against Brewer for whatever amount it was decided that he might owe. However, we feel that the evidence shows conclusively that the defendant, Cloud, is responsible for the entire bill and we think that the judgment of the lower court should be affirmed."
In the brief of counsel for defendant Cloud, it is stated: "The issues involved in this appeal center about two questions, namely, (1) whether the evidence adduced at the trial of the case was sufficient to show that there was any contract entered into between plaintiff and defendants, and particularly between plaintiff and defendant Cloud, and (2) if such agreement is sustained by the evidence, what liability, if any, there is on the part of the defendant Cloud."
With respect to the first stated question Cloud's counsel argue that there has been no fulfillment of the requirements of Civil Code, Article 2277, which are that a verbal contract relative to movable property or for the payment of money, above $500 in value or amount, must be proved at least by one credible witness and other corroborative circumstances.
On October 10, 1940, so the evidence discloses, defendant Brewer, together with his co-owner Mrs. Evelyn Gray leased and let in writing unto one Tonnes Dennison a certain parcel of land in Rapides Parish, Louisiana, fronting 900 feet on U.S. Highway 165 and extending back therefrom, between parallel lines, 1,829.5 feet. The lessors reserved in the instrument the right to operate on the affected property a parking lot. Adjoining the leased premises was Camp Claiborne, the construction of which was then being undertaken by the United States Government.
Dennison, on October 12, 1940, sub-let to defendant Cloud a portion of said property, having a frontage on the highway of 250 feet, lying adjacent to Camp Claiborne, the sub-lease providing for the operation by Cloud of a canteen and that nothing would be done by him conflicting with the business of a parking lot.
Thereafter, Brewer and Cloud had discussions regarding the feasibility of their establishing and operating a parking lot on the entire leased premises. These discussions culminated in a decision to undertake the considered venture. Influencing it largely was the fact that numerous workmen at the army camp project were then parking their automobiles on and along the shoulder of the highway in that vicinity.
Following such decision, defendant Brewer visited plaintiff and requested him to deliver to the land a quantity of gravel sufficient to provide adequate parking facilities. No writing evidenced the order and its resulting acceptance.
The deliveries, which were made by trucks, commenced on December 3, 1940, and were completed on December 23, 1940. These involved a total of 4,154.5 yards of gravel. Some of the material was placed on the part leased by Cloud for his canteen, while most of it went on the remaining portion of the premises. In many, perhaps most, instances Cloud gave instructions as to its dumping and placing; and there were men employed by him who checked the gravel as it arrived.
On December 24, 1940, the day after completion of the deliveries, plaintiff visited Cloud for the purpose of collecting for the gravel. These persons had never previously met. Cloud at that time gave to plaintiff his personal check for $1,000 as a part payment of the indebtedness, and he promised to pay more after the first of the year. There was no discussion on the question of who was liable for the gravel.
Later, in the year 1941, additional payments on the gravel account were made by Cloud, these being for $793.11 on January *Page 101 
15, $400 on January 25, $500 on February 9, and $500 on February 12. Each of these was represented by Cloud's check drawn on his personal bank account.
Operation of the parking lot commenced on January 1, 1941. All payments on the project's indebtedness made prior to that date, including the $1,000 given to plaintiff on December 24, 1940, and the wages of the gravel checkers, came from funds advanced by Cloud. Payments made after that date, on the gravel account and on wages for parking attendants, were with proceeds from the parking lot venture as augmented by Cloud's personal funds.
During the month of February, 1941, as the construction of Camp Claiborne neared completion, a sharp decline in the receipts of the business was noticed. The camp's completion occurred March 24, 1941, as a result of which the parking venture suffered financial disaster.
Plaintiff Reel testified of his having been informed by Brewer that Cloud would provide payment for the gravel. We quote part of his testimony on this point: "Mr. Brewer told me about his deals with Mr. Cloud several times and said that the only way he went into the deal at all was because he was to furnish the land and Mr. Cloud was to furnish the gravel, that he didn't have the money and wasn't going to put up any money."
Tonnes Dennison, a disinterested witness who aided the defendants in surveying the property, said: "At the time we made our survey, that is Mr. Brewer and Mr. Cloud and myself, of where they would like to have this parking lot, there was some discussion made as to probable cost and the monies involved; at that time Mr. Brewer stated, as I remember it, that he did not have any money for the necessary graveling and the maintaining of parking attendants; it was stated at the time by Mr. Cloud that he would take care of that matter, * * *."
Defendant Brewer testified that his agreement with Cloud provided for the latter's financing of the parking lot, that is the "fixing up and putting of gravel on it"; that he obligated himself to furnish the land; and that after the payment of all expenses, the proceeds of the venture would be divided between the two.
Cloud, on the other hand, insisted that he was merely the agent of Brewer. His responsibility under the verbal contract, said he, was to keep track of the cars that went on the lot, to take care of the money, to pay off the help, and to see that everything went off all right; and he and Brewer were "going to split fifty-fifty after the thing was paid off by the parking of cars."
The trial judge found the contention of Cloud to be untenable, and this holding seems justified by the evidence. Inconsistent with the contended existence of an agency relationship, but corroborative of the testimony of Brewer and Dennison that Cloud had agreed to pay for the gravel, are the circumstances that Cloud expended in excess of $1,000 of his personal funds for the conditioning of the lot and that some of the gravel received was used by him in aid of the canteen operations in which he alone was interested. And it may be observed that with such corroborating circumstances and the mentioned testimony the requirements of Civil Code, Article 2277 are fulfilled.
Cloud's alternative plea furnishes the above-stated second question of whether or not there was joint liability on the part of the two defendants, and it suggests the existence of an ordinary partnership.
Partnerships, declares Civil Code, Article 2805, must be created by the consent of the parties. The jurisprudence dealing with this codal provision holds that the real intention of the parties is to be ascertained in determining the question of partnership vel non. In this connection the Supreme Court in Chaffraix Agar v. John B. Lafitte Company, 30 La.Ann. 631, said: "The true, final, satisfactory, conclusive test is in the answer to the question: What was the real meaning and intention of the parties, as expressed in their contract, whether verbal or written? If they intended to create a partnership, they will be treated as partners inter sese and with respect to third persons: If they did not intend to create that relation, but merely to divide the profits, or to share profits and losses, in a speculation or adventure, they will not be partners inter sese, nor will they be liable as such. Those who hold themselves out to the public as partners, or knowingly permit themselves to be so held out, may not, indeed, be actually partners, if they have not so intended and agreed; but they will be subject to the same liabilities as partners to those who have dealt and given credit on the faith and in consequence of such acts." *Page 102 
This test was approved and followed in Shushan Brothers 
Company v. Drennan Hillcoat et al., 158 La. 480, 104 So. 214, and Hardin v. Howard et al., La.App., 167 So. 138.
In the instant case both defendants testified emphatically that their agreement did not provide for the creation of a partnership, and that none was intended. Furthermore, the evidence discloses that they did not hold themselves out to the public, or to this plaintiff, as partners. Consequently, there is no joint liability here such as the law imposes on members of an ordinary partnership.
The decision of the district court appears to be correct, and it is affirmed.