62 So.2d 167 (1952)
HARPER
v.
RAGUS.
No. 7878.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1952.
Rehearing Denied January 7, 1953.
*168 W. Sartis Bassett, Oak Grove, Albin P. Lassiter, Monroe, of counsel, for appellant.
Voelker & Ragland, Lake Providence, for appellee.
GLADNEY, Judge.
Plaintiff, Arnold Joe Harper, instituted this suit against the defendant, Edwin H. Ragus, to recover the maximum award of workmen's compensation for the loss of all the fingers on his left hand as the result of an accident while he was engaged in operating defendant's mechanical corn picker on the farm of Harry Shields in East Carroll Parish, Louisiana.
Following the trial of the case, judgment was rendered rejecting the demands of plaintiff as the court a quo determined that plaintiff was not at the time of his injury an employee within the provisions of the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., since he was then involved in a joint venture or partnership with the plaintiff.
Most of the facts are easily resolved. The defendant operated a farm of approximately four hundred acres south of Lake Providence and in the cultivation thereof he employed various power driven farm machinery, such as tractors, combines, and a hay baler and corn picker. In April, 1948, plaintiff was employed by defendant as a general handy man around the farm and particularly to operate the farm machinery. Harper was compensated for his labors at a salary of $100 per month and certain contributions from his employer which raised his wages to an amount equivalent to $43 per week, which sum is not in dispute.
On or about October 2nd or 3rd, 1950, plaintiff was directed by Ragus to take the corn picker to the nearby farm of *169 Harry Shields and harvest Mr. Shields' corn. On October 9th plaintiff suffered the injury which necessitated the amputation of all five fingers on his left hand. This accident occurred when, during the operation of the corn picker, plaintiff descended from the driver's pedestal and with his gloved hand attempted to remove an ear of corn from an exposed snapping roller. Plaintiff's hand was pulled into the roller and mangled. Harper was hospitalized for a little more than a week and then returned to the Ragus farm where he gradually resumed light work. After the accident Ragus paid plaintiff the sum of $200 and his medical and hospital bill amounting to $193.
About December 1, 1950, plaintiff moved from the Ragus place, but around this date he executed a release for a reported consideration of $600, the purpose of said document being to release Ragus from all claims, damages, etc., resulting from an accident which occurred at Wilton Plantation. The record indicated the $600 was never paid to Harper. No court appearance was involved.
Counsel for appellee have correctly stated in brief the issues which require our consideration: (1) Was the necessary employer-employee relationship in existence so far as the subject accident and resulting injury are concerned to qualify the plaintiff-appellant for benefits under the Louisiana Workmen's Compensation Act?
(2) Did the release taken by defendant from plaintiff constitute an attempted lumpsum settlement of a claim without court approval such as is contemplated by the fraud penalty provisions of the Workmen's Compensation Law?
(3) Was the plaintiff guilty of such failure to use adequate safety guards as would preclude him from recovering under the Workmen's Compensation Law?
(4) If it should be found that compensation is due, is the Harper injury covered by the specific loss schedule or the disability provisions of the Workmen's Compensation Law and what should the compensation be, if any at all?
The first contention made by the defense is that plaintiff occupied the status of a working partner and that as such the claimant cannot be both employer and employee within the intent of the Workmen's Compensation Act. This doctrine has been consistently followed in Louisiana. Louisiana Workmen's Compensation Law & Practice (Malone), page 76. Vascocue v. Collins, La.App., 1933, 150 So. 414; Dezendorf v. National Casualty Company, La.App., 1936, 171 So. 160; Savant v. Goetz & Lawrence, 1926, 160 La. 916, 107 So. 621.
The difficulty in resolving the question lies in determining whether the contractual arrangement is such that the complainant is removed from the status of being an employee within the Workmen's Compensation Act. The Workmen's Compensation Act applies to every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in certain named hazardous trades, businesses and occupations and a person rendering service for another in any of the trades, businesses or occupations covered is presumed to be an employee. LSA-R.S. 23:1033 and LSA-R.S. 23:1044. In addition to the relationship of employer and employee there may be other relationships which remove the injured worker from the protection of the act. These include the relations of partners inter sese, seller and buyer, principal and contractor and lessor and lessee. In the instant case the defense is advanced that Harper and Ragus were partners in gathering Shields' corn
LSA-Civil Code Article 2801 defines partnership as "a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties." Partnerships must be created by the consent of the parties. Article 2805 of the LSA-Civil Code.
Interpreting these articles the Supreme Court said in Chaffraix & Agar v. Lafitte & Company, 1878, 30 La.Ann. 631:

*170 "The true, final, satisfactory, conclusive test is in the answer to the question: what was the real meaning and intention of the parties, as expressed in their contract, whether verbal or written? If they intended to create a partnership, they will be treated as partners inter sese and with respect to third persons; if they did not intend to create that relation, but merely to divide the profits, or to share profits and losses, in a speculation or adventure, they will not be partners inter sese, nor will they be liable as such. Those who hold themselves out to the public as partners, or knowingly permit themselves to be so held out, may not, indeed, be actually partners, if they have not so intended and agreed; but they will be subject to the same liabilities as partners to those who have dealt and given credit on the faith and in consequence of such acts."
Likewise in Collom v. Bruning, 1897, 49 La.Ann. 1257, 22 So. 744, 747, it was held:
"Partnership is a special contract, dependent for its creation upon the consent of the parties (Rev.Civ.Code, art. 2805) that that particular relation should be established between them. The mere fact that two persons may both be interested pecuniarily in the same business venture, and that each gave to it equally his time and attention, by no manner of means carries with it, as a matter of law, the conclusion that they stand towards each other as partners."
The same rule was followed in Shushan Bros. & Co. v. Drennan & Hillcoat, 1925, 158 La. 480, 104 So. 214, 216:
"To hold, under this state of facts, that the presumption of partnership, arising from a mere agreement to participate in the profits, is sufficient to establish a partnership, in the absence of intention between the parties to form a partnership, and in the absence of proof between the parties of a community of goods and proprietary interest therein, is clearly erroneous."
We observe the foregoing authorities determine there must exist an intention to establish a partnership and that such intention must be clearly indicated by the parties to the particular arrangement. The decisions above cited have been approved recently in: Reel v. Brewer, La.App.1942, 6 So.2d 99; Glover v. Mayer, 1946, 209 La. 599, 25 So.2d 242; Whitmeyer v. Poche, La.App.1950, 49 So.2d 69; Carlson v. Ewing, 1951, 219 La. 961, 54 So.2d 414.
The evidence concerning the particular arrangement between Ragus and Harper is somewhat vague. It is strictly a verbal arrangement. Ragus testified that while Harper was employed by him about October 2, 1950, he advised him that he could take the corn picker and harvest the corn on Mr. Shields' nearby plantation, and plaintiff would give him one-half the remuneration received, less expenses. His explanation for making this special agreement was that there was little to do on the farm at that season of the year and he wished to assist plaintiff in securing additional compensation. Plaintiff denies most positively there was ever any agreement of partnership, expressed or implied, and no mention made of a division of profits on a fifty-fifty basis, less operating expenses. In corroboration of defendant's testimony that of Sam Denton and Harry Shields was offered. Denton stated that he heard Mr. Ragus tell Harper that he would give him fifty per cent of the amount earned from the corn picking after deduction for oil and gas. Shields testified that Ragus told him he was giving Joe one-half of whatever was made, and added, "Well, you see I was not interested in what he had did with the money. All I was interested in was getting the corn in. But I understood Ed to say by taking Joe in as a partner he would gather the corn and the job would get done much quicker. I was not interested in who got the money." Further confirmation of the partnership understanding was attempted through J. C. Donovan who testified that after Harper's injury, Ragus made him a similar proposition.
Harper stoutly denies defendant ever stated there would be a division of money *171 to be paid by Shields or that there was any agreement for a partnership, express or implied. His testimony is unsupported, however, except by a witness, Robert Gorman, who testified that after Harper was injured Ragus attempted to hire him at $5 per day. Other facts, however, diminish the strength of defendant's position. These include a continued payment of two months wages after the accident and a somewhat roundabout method of attempting to secure a release of liability. During this procedure and while discussing with his attorney the obtaining of the release, no mention was made by Ragus that a partnership existed. His attorney so testified and refused to represent him in this suit.
It is our conclusion that there was no understanding for a joint venture or partnership such as would distinguish it from an employer-employee relationship under the Workmen's Compensation Act. Certainly, we believe Harper did not understand it as such. But assuming that Harper knew he was to receive one-half of the remuneration after deduction of certain expenses we find Ragus still in complete supervision, with Harper's previous status of an employee virtually unchanged except that he would receive more in wages. We think the evidence fails to overcome the presumption which flows from LSA-R.S. 23:1044.
The foregoing conclusion removes the only obstacle that would prevent Harper from becoming a beneficiary under the Workmen's Compensation Act, unless we sustain the defense that plaintiff was guilty of a deliberate failure to use an adequate guard or protection against accident. LSA-R.S. 23:1081.
This alternative defense is unsupported by the record. The defense contends that in order for plaintiff to have received his injury it was necessary for him to halt the forward motion on the ground of the corn picker, but not halt the motion of the picking rollers which snapped the corn from the stalk; climb down from the driver's platform to the ground and walk around the front of the machine to the front right side thereof; climb onto the right front tire of the machine and insert his hand into the danger areathat he could not do so without climbing onto the tire for he could not reach into the danger area while standing on the ground. It is then urged that plaintiff could have avoided the accident by stopping the operation of the snapping rollers at the same time he stopped the forward motion of the entire unit and he could have done so with the flick of his wrist; and that it was not at all necessary for plaintiff to remove the corn from the machine for the machine was not clogged.
There was introduced evidence that at some time prior to the accident a notice was painted upon the machine cautioning the operator to disengage the clutch before dismounting from the machine and "Do not attempt to oil or adjust while the picker is in motion." The actions of Harper just prior to or at the time of his injury do not reflect a disregard of the above warnings. He simply attempted to clear the rollers of a "dancing" ear of corn when his hand was pulled into the roller. If Harper's actions were not governed by the Workmen's Compensation Act a plea of contributory negligence might avail, but in the instant case such defense is expressly abrogated. LSA-R.S. 23:1042(3).
It is not indicated what, if any, safeguard was provided, the use of which could have prevented the injury. The argument that there was a violation of the provisions of LSA-R.S. 23:1081 is untenable. Counsel cite no authority in point and we do not know of any apropos to the evidence presented in this case. The defense is rejected.
The third issue raised in this case is whether the release executed by Harper at the request of Ragus constituted an attempted lump-sum settlement without court approval such as is contemplated in the penalty provisions of the Workmen's Compensation Law. Plaintiff demands one and one-half times the ordinary amount of compensation recoverable claiming such sum as due because of violation by defendant of the provisions of LSA-R.S. 23:1274. In our opinion the penalties cannot be imposed. *172 The release signed by Harper cannot in any respect be classed as a lump-sum settlement. The release between the parties had no legal effect whatsoever. It was not approved by the court and apparently neither of said parties had in mind a compensation settlement at the time the instrument was signed, much less an absence of a bona fide dispute as to the amount of compensation due. There is and can be no dispute between the parties where a lump-sum settlement is made. The provisions of the Act contemplate an agreement that an injury has occurred and plaintiff is entitled to certain benefits under the Act. See: Puchner v. Employers' Liability Assurance Corporation, 1941, 198 La. 921, 5 So.2d 288; Cagnolatti v. Legion Pants Company, La.App.1939, 186 So. 377; Fontenot v. Goldenstern Pipe & Supply Company, La.App.1951, 50 So.2d 484.
It follows that there is no authority for imposing the penalties provided under LSA-R.S. 23:1274.
The last issue for consideration concerns the amount of compensation to which plaintiff is entitled. Counsel for respondent say that payment should be made under the specific loss provisions of the statute LSA-R.S. 23:1221(4) which entitles the claimant to a specified recovery for the loss of certain specific members of the body. We are of the opinion in view of the authorities hereafter cited that claimant is entitled to compensation under the provisions of the act LSA-R.S. 23:1221(2), providing for payment for injury producing permanent total disability to do work of any reasonable character.
Harper testified that after his period of recuperation he attempted to do the various types of work of his previous employment but that his injured hand prevented him from properly operating such machines as a corn puller, combine or power hay press. He found that under certain limited conditions he could drive a tractor but even with this he was unable to attach connections such as plows, nor is he able to raise the tractor power lift. After leaving Ragus, plaintiff tried to do a job with a lifetime friend, Mr. Edmonson, who employed him to assist at the gin, but that he left this job after he realized he was not giving satisfactory service. Mr. Edmonson said his earnings were approximately $65 per month. Later Harper was employed a short time with Mr. Howard, who testified that Harper's work was satisfactory in driving a tractor for which he paid him $4 per day. The record shows Harper was furnished assistance on any job involving machinery while he was on Mr. Howard's place.
It is our opinion that the instant case falls under our well-established and firmly fixed jurisprudence holding that a disability to do work of any reasonable character is deemed total within the intendment of the law whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar character as that which he was accustomed to performing. Knispel v. Gulf States Utilities Company, Inc., 1932, 174 La. 401, 141 So. 9; Barr v. Davis Bros. Lumber Company, Ltd., 1935, 183 La. 1013, 165 So. 185; Stieffel v. Valentine Sugars, Inc., 1938, 188 La. 1091, 179 So. 6; Washington v. Independent Ice & Cold Storage Company, 1947, 211 La. 690, 30 So.2d 758; Hughes v. Enloe, 1948, 214 La. 538, 38 So.2d 225; Young v. Central Surety & Insurance Corporation, La.App.1949, 41 So.2d 700; Brown v. Mansfield Hardwood Lumber Company, La.App.1951, 56 So.2d 278.
Subsequent to the accident Ragus paid Harper the sum of $200 in two payments of $100 each on November 1, 1950 and December 1, 1950. In addition thereto the defendant paid medical and hospital expenses in the amount of $193. He is entitled to credit for these items. It follows from our decision that the judgment appealed from should be reversed and set aside.
It is ordered, adjudged and decreed that the judgment appealed from be and hereby is annulled, avoided and reversed, and it is further ordered, adjudged and decreed that there be judgment in favor of Arnold Joe Harper and against Edwin H. Ragus for weekly compensation payments of $21.45 from and after October 9, 1950, and continuing during disability not to exceed 400 weeks, with interest at the rate of 5% *173 per annum on each past-due installment from its due date until paid, the whole subject to payments of $100 paid on November 1, 1950, and $100 paid on December 1, 1950. It is further ordered that defendant pay all costs of this suit, including costs of the appeal.