AYRES, Judge.
By this action plaintiff, as the surviving widow of Fred J. Stovall, deceased, seeks to recover for herself and four minor children compensation on account of Sto-vall’s accidental death by electrocution on April 7, 1956, while operating a drilling rig drilling a water well in the City of Shreveport. Impleaded as defendants are Kay and Harrison, a partnership, and its individual partners, the developers of the property, and Jack C. Solomon, the deceased’s alleged employer. There was judgment against the first named defendants, from which no appeal has been taken, and, in favor of the defendant, Solomon, from which plaintiff prosecutes this appeal.
The rejection of plaintiff’s claim as against defendant Solomon is predicated upon the conclusion reached by the trial court that the deceased was not an employee of this defendant but that the deceased and Solomon were either partners in the water well drilling business or were engaged in a joint venture. It was also concluded that recovery could not be had from the aforesaid partnership formerly existing between the deceased and Solomon because the deceased received no salary or wages but performed his services and work as his contribution to the joint undertaking.
The primary question presented for determination by this court is whether the deceased at the time he met his death was an employee of Jack C. Solomon, doing business as J & J Water Well Drilling Company. A brief résumé of the facts appears indispensable to a correct understanding of the issues to be determined. The record discloses these pertinent facts.
Jack C. Solomon and one Jeff Burton, both employees of the Schlumberger Well Service Corporation, entered into a partnership with each other about 1954 for the purpose of engaging in the business of drilling water wells. Both men were experienced by virtue of their employment in the technique of drilling. During their spare time they constructed a rig and began drilling water wells during time off *553 from their employment on a 50-50 basis, that is, each was to receive one-half the profits, if their venture was successful, or pay one-half the loss in the event their operations were conducted at a loss. A firm name of J & J Water Well Drilling Company was adopted. This partnership continued until about May, 1955, when Burton sold his interest therein, as well as his interest in the physical equipment of the partnership, to one Joe Kent. Solomon and Kent thereafter pursued the operation of the business as a partnership under the name formerly adopted. Finding that they were unable to personally conduct the drilling operations, either through increase of business or because of their otherwise employment, the services of Stovall were sought and acquired to drill the wells on a basis of pay to Stovall of 50 percent of the net profits earned. The remaining 50 percent was divided equally between Solomon and Kent. Stovall had no interest in the drilling rig or other physical assets of the J & J Water Well Drilling Company.
The partnership between Solomon and Kent was terminated on or about March 28, 1956, by Kent selling to Solomon all his right, title and interest in the partnership known as J & J Water Well Drilling Company, its business, good will, and name, and the present or future profits accrued therefrom, as well as its physical assets. Thereafter operations continued on the same or similar basis between Solomon and Stovall as formerly existed between Stovall on the one hand and Solomon and Kent as the J & J Water Well Drilling Company on the other. Solomon furnished the drilling rig, provided for its lubrication, procured the contracts and collected therefor after the work was done by Stovall with the assistance of one other laborer.
That Stovall was rendering services in a trade, business or occupation covered by the Workmen’s Compensation Statute is not bpen to question. The presumption, therefore, under the statute is that he was an employee. Nevertheless, in our opinion, the evidence establishes,' without serious question of doubt, that such was the actual status of Stovall when accidentally killed. LSA-R.S. 23:1044 provides:
“A person rendering service for another in any of the trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.”
“Partnership” is defined in LSA-C.C. art. 2801 as
“ * * * a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties.”
And LSA-C.C. art. 2805 provides:
“Partnerships must be created by the. consent of the parties.”
In construing these articles, the Supreme Court, in Chaffraix & Agar v. John B. Lafitte & Co., 30 La.Ann. 631, 639-640, said:
“The true, final, satisfactory, conclusive test is in the answer to the question : What was the real meaning and intention of the parties, as expressed in their contract, whether verbal or written? If they intended to create a partnership they will be treated as partners inter sese and with respect to third persons: If they did not intend to create that relation, but merely to divide the profits, or to share profits and losses, in a speculation or adventure, they will not be partners inter sese, nor will they be liable as such.”
It was likewise held in Collom v. Bruning, 49 La.Ann. 1257, 1262, 22 So. 744, 747, that the mere fact that two persons may both be interested pecuniarily in the same business venture and that each gives to it his time and attention does not carry with it as a matter of law the conclusion that they stand towards each other as partners but that consent shown by one person who has *554 furnished the capital by which certain operations are carried on that another who has employed his time, his skill and given his services for their success should receive one-half of the profits to be derived from the same, is perfectly consistent with the fact that the latter person stands toward the'former as a mere employee.
It was also held in Shushan Bros. & Co. v. Drennan & Hillcoat, 158 La. 480, 485-486, 104 So. 214, 216, that an agreement to participate in the profits of an enterprise was insufficient to establish a partnership in the absence of an intention between the parties to form a partnership, where one of the parties purchased goods in his individual name and the other obligated himself to furnish the necessary funds for such purchases, out of which he was to be reimbursed from the proceeds.
The above and other authorities were reviewed by us in Harper v. Ragus, La.App., 62 So.2d 167, 170, from which we concluded:
“We observe the foregoing authorities determine there must exist an intention to establish a partnership and that such intention must be clearly indicated by the parties to the particular arrangement. The decisions above cited have been approved recently in: Reel v. Brewer, La.App.1942, 6 So.2d 99; Glover v. Mayer, 1946, 209 La. 599, 25 So.2d 242; Whitmeyer v. Poche, La.App.1950, 49 So.2d 69; Carlson v. Ewing, 1951, 219 La. 961, 54 So.2d 414.”
There is no evidence justifying the conclusion that either Stovall or Solomon had any intention of forming a partnership between them. The preponderance of the evidence is to the contrary. Solomon admits that he discussed with Stovall a change in the method of the computation of Stovall’s pay so as to place it on an hourly basis. Withholding tax statement, federal forms W-2, were furnished by defendant showing Stovall’s annual earnings as an employee, the same as furnished the one other employee. No partnership income tax return was ever prepared and filed. Solomon’s individual return was made by a certified public accountant. Solomon admits that no partnership relationship was ever discussed with the accountant. Stovall’s earnings were shown as a deductible item of labor expense from defendant’s gross income.
The manner of operation of the business is inconsistent with defendant’s contention. On the completion and settlement for the drilling of a well, Stovall took his part of the earnings as payment for his labor and services; Solomon and Kent left their interest to accumulate in the partnership between the two of them so as to increase their assets and consequently, their buying power. Solomon made the contracts, collected and deposited the money from the operations, wrote the checks, paid for the material and labor, including that of Sto-vall. No name was ascribed to this purported partnership between Stovall and Solomon. All of these facts convincingly show there was no intention on the part of Solomon to form a partnership with Stovall despite his belated position that Stovall had made various and sundry statements to various and sundry parties to the effect that a partnership did exist between them.
Seemingly undue importance was attached to the statement of plaintiff, who said that her husband had stated to her that he was getting half the profits from the wells he drilled and that “it is almost like being in partners with them”, not that he was in fact a partner. It appears consistent with reason that, had such a partnership existed, Stovall’s statement to his wife would have been direct and positive and unequivocal to that effect. As we construe the expression, it conveys a meaning contrary to that contended by defendants.
Neither can we attach the importance that defendant does to the purported statements of Stovall to the effect he was a member of a partnership with Solomon. Such statements purportedly made by him constitute the weakest kind of proof. With *555 respect to similar testimony, this court, in Hood v. Glass, 198 So. 543, 545, stated:
“Testimony of that character, when standing alone, is entitled to little consideration and should be received with caution, the reason for this being that it is so easily fabricated.”
This testimony not only stands alone but is contradicted and disproved by the facts established by the record, as hereinabove pointed out. The conclusion is, therefore, in our opinion, inescapable there was not only no intention on the part of either Solomon or Stovall to form a partnership and, hence, there was no partnership, but that the proof leaves no doubt but at the time of the accident and his death Stovall was an employee of Solomon, engaged in the performance of his duties as such and within the course and scope of his employer’s business of operating and conducting a water well drilling business.
This conclusion likewise disposes of defendant’s contention there’ existed between him and the deceased a joint venture.
Neither do we find any merit in defendant’s contention that compensation is not payable because of the manner or method by which the deceased’s wages were computed. The jurisprudence is replete with authorities where compensation was allowed on the basis of a laborer’s earnings rather than on a certain stipulated hourly, daily or weekly wage. That has been a consistent rule in the logging and timber industry where wages are calculated on the basis of work done, the number of feet of logs cut, or the number of cords or units of pulpwood produced. So long as a laborer’s earnings may be determined by evidence, the basis for the calculation of the rate of earnings as agreed upon by the parties is a matter of no material consequence.
While our conclusion as to the deceased being an employee of the defendant and not defendant’s partner is predicated upon a preponderance of the evidence, it might be well to state, as we observe, that the defense, based upon an alleged partnership relationship, does not carry with it the exoneration from liability as defendant contends. The Supreme Court in Trappey v. Lumbermen’s Mutual Casualty Co., 229 La. 632, 86 So.2d 515, recognized a partner’s right to compensation as against a partnership of which he was a member. Had the existence of the partnership been proven in the instant case, such partnership would have been obligated to plaintiff for the compensation herein sued for and the defendant, Solomon, as one of the two partners in such an ordinary partnership, would have been liable for, at least, one-half the amount thereof.
For the reasons assigned, Jack C. Solomon, defendant, is liable, in solido, with Kay & Harrison for the compensation as prayed for by plaintiff. Therefore, the judgment should be reversed so far as rejecting plaintiff’s demands against the defendant, Solomon, and rendered in plaintiff’s favor.
Accordingly, the judgment appealed, so far as rejecting plaintiff’s demands against Jack C. Solomon, be and the same is hereby annulled, avoided, reversed and set aside, and it is now, therefore, ordered, adjudged and decreed there be judgment herein in favor of Mrs. Allie Taylor Stovall, individually and for the use and benefit of her four minor children, Sandra Lynn Stovall, James Lee Stovall, Barbara Ann Stovall and Glenda Stovall, and against the defendant, Jack C. Solomon, for the full sum and weekly compensation of $30 per week for 300 weeks, beginning April' 14, 1956, until paid, together with five percent per annum interest on each of said weekly installments from its maturity until paid, and for the additional sum of $300 funeral expense, with five percent per annum interest thereon from judicial demand until paid, and for all costs, including the cost of this appeal, and further fixing plaintiff’s attorney’s fees at 20 percent of the amount of this judgment, not, however, exceeding $1,000, and *556 further decreeing and recognizing said indebtedness on the part of the defendant, Solomon, to be due, in solido, with that for which Kay & Harrison were condemned by the trial court in this cause.
Reversed, in part, and rendered.